STATE OF NORTH CAROLINA v. DAVID L. JONES

No. 20

(Filed 10 March 1971)

1. Criminal Law §§ 134, 136— sentencing of defendant — commitment for psychiatric treatment prior to sentencing

Action of the trial judge in accepting defendant's plea of guilty to burglary and assault and then committing defendant to a State hospital for psychiatric treatment prior to sentencing him, *held* not prejudicial to the defendant, although it would have been the better practice if the trial judge had sentenced the defendant and thereafter requested the prison authorities to give him necessary medical treatment.

2. Criminal Law § 23— voluntariness of guilty plea — sufficiency of findings of fact

Where the evidence supports the finding that defendant entered a plea of guilty voluntarily and with full knowledge of his rights, the acceptance of the plea will not be disturbed.

3. **Criminal Law § 161— assignment of error — exceptions**

   An assignment of error not supported by an exception is ineffectual and will not be considered on appeal.

4. **Criminal Law § 136— mental capacity to receive sentence**

   A defendant who had sufficient mental capacity to plead had sufficient mental capacity to receive sentence.

5. **Criminal Law § 167— harmless error — new trial**

   Harmless error is not sufficient to justify a new trial.

6. **Courts § 9— superior court judge — overruling order of previous judge**

   Ordinarily, one superior court judge may not modify, overrule, or change the judgment of another superior court judge previously made in the same action.

7. **Criminal Law § 23— withdrawal of guilty plea — lack of duress**

   In the absence of any evidence that defendant's plea of guilty before the first superior court judge was obtained through duress, second superior court judge properly denied defendant's motion that he be allowed to withdraw his guilty plea and to enter a plea of not guilty.

8. **Criminal Law § 5— responsibility for crime — insanity**

   The test for insanity which precludes responsibility for crime is the ability to distinguish the difference between right and wrong.

9. **Criminal Law § 29— mental capacity to stand trial**

   If a defendant is capable of understanding the nature and object of the proceedings against him and of conducting his defense in a rational manner, he is sane for the purpose of being tried, though on some other subject his mind may be deranged.

10. **Criminal Law §29— mental capacity to enter plea of guilty — sufficiency of evidence — defendant's sociopathic personality**

    Although there was some evidence that the defendant was suffering from a sociopathic personality, the trial court correctly determined that defendant had mental capacity to enter a plea of guilty to three charges of first-degree burglary, where (1) the State's evidence showed that defendant had no specific mental disturbance and that he knew the difference from right and wrong and could assist in his own defense, and (2) the defendant's own witness testified that defendant was without psychosis and could determine right from wrong.

APPEAL by defendant from *Cooper, J.,* October 12, 1970 Criminal Session of CUMBERLAND Superior Court.

On 22 May 1968 defendant was arrested on three first degree burglary charges and one charge of an assault on a female with intent to commit rape. On 27 June 1968, upon motion of defendant's court-appointed counsel, defendant was committed to Dorothea Dix Hospital for observation and treatment, under

the authority of G.S. 122-91. On 30 July 1968 Dr. Andrew Laczko, Director of Forensic Unit of Dorothea Dix, after finding defendant was well oriented, with no impairment of memory, with a general fund of knowledge above average, and consistently free of psychotic symptoms, reported:

> *"Physical Examination:* Revealed a well developed and nourished, white male with all findings essentially within normal limits. The laboratory findings including x-ray and blood serology were normal. The psychological testing revealed a Full-Scale I.Q. of 104 which places him in the average intellectual functioning.

> *"Diagnosis:* Without Psychosis (Not insane).

> *APA Code: 91.10*

> *"Recommendations:* The examination, observation and testing revealed no evidence of psychosis (insanity) or any such mental disturbance which would interfere with this patient's ability to plead to the Bill of Indictment. He does know the difference between right and wrong, he is able to assist in his own defense and he is fully aware of the consequences of his acts. Mr. Jones should be returned to the court."

On 29 October 1968 Dr. Assad Meymandi, an expert in the field of psychiatry, conducted a private psychiatric examination of defendant. His evaluation was that defendant was not insane, that he did know the difference between right and wrong at the time of the crime, but he did suffer from an impulse disorder diagnosed as a sociopathic personality, impulsive behavior and uncontrollable acts. Dr. Meymandi recommended: "Regardless of the outcome of the patient's trial, I believe that this individual is in need of intensive and prolonged psychiatric treatment."

At the December 2, 1968 Criminal Session, Canaday, J., presiding, defendant, through privately employed counsel, W. Ritchie Smith, Jr., entered pleas of guilty to one of the charges of first degree burglary and to the charge of assault with intent to commit rape, and filed a written plea of guilty to which he was sworn. In the written plea defendant stated he understood the charges against him; that he was not under the influence of any alcohol, drugs, narcotics, medicines, or other pills; that

he understood that he had the right to plead not guilty and to be tried by a jury; that his plea was guilty as charged and that in fact he was guilty; that he understood that he would be sentenced to life imprisonment for first degree burglary and could be sentenced to as much as 15 years imprisonment for assault with intent to commit rape; that no one had influenced him by any promise or threat to plead guilty; that he had had time to confer with his lawyer and that he was ready for trial; that he freely, understandingly, and voluntarily authorized his attorney to enter a plea of guilty on his behalf. Judge Canaday examined defendant as to the voluntary nature of his plea and found that defendant entered the plea of guilty freely, understandingly, and voluntarily, without undue influence, compulsion or duress, and without promise of leniency, and ordered the plea accepted.

After the plea was accepted, defendant's attorney moved that defendant be sent to the hospital for treatment, pursuant to Chapter 122 of the General Statutes of North Carolina. In support of his motion, defendant's counsel offered the testimony of Dr. Meymandi, who testified that his examination of the defendant revealed, first, that the patient knew the difference between right and wrong; second, that the patient is suffering from a sociopathic personality, impulsive behavior, and impulse disorder; and, third, that he is not suffering from any neurological deficit, as tested by neurological examination—the brain wave test. He further testified that based upon the knowledge that he had about the patient's history, the patient would benefit by psychiatric treatment, and that it is not only desirable but necessary that the patient undergo intensive therapy; that the patient is not dangerous to himself but is dangerous to other people; that the patient has average general function, if anything a little above normal; that his IQ is over 100; and that at the time he examined the patient, the patient definitely knew the difference between right and wrong and was able to assist his attorney in his defense of these cases. Based upon this testimony, Judge Canaday concluded that defendant's mental condition was such as to render him dangerous; that he was incapable of receiving sentence; and that he should be committed to the hospital designated in G.S. 122-85, to be kept in custody therein for treatment and care as provided by law. Judge Canaday then ordered defendant committed to a State hospital, pursuant to the provisions of G.S. 122-84.

Defendant remained in Dorothea Dix Hospital until 19 October 1970, when he was brought before Thomas D. Cooper, Jr., judge presiding at the October 12, 1970 Session of Cumberland for sentencing. Defendant then moved in open court to be allowed to withdraw his plea of guilty on the ground that such plea was obtained through duress, and to be allowed to enter a plea of not guilty. This motion was denied. On 22 October 1970, defendant notified Judge Cooper that he had dismissed his attorney, W. Ritchie Smith, Jr., and requested that the court appoint William S. Geimer, Assistant Public Defender for the Twelfth Judicial District, to represent him. Mr. Geimer was appointed and renewed the motion of 19 October 1970 to allow defendant to withdraw his plea of guilty entered on 5 December 1968, alleging as a further ground defendant's lack of capacity to enter such plea. Judge Cooper thereupon found as a fact that the defendant executed and swore to his written plea of guilty before Harry E. Canaday, Judge of the Superior Court in Cumberland County, on 5 December 1968, at which time defendant was duly interrogated by Judge Canaday as to the voluntariness of his plea of guilty, and denied the defendant's motion. Defendant then moved for a hearing on the admissibility of his plea of guilty, which motion was also denied. Judge Cooper sentenced the defendant to life imprisonment on the burglary charge and to 15 years imprisonment on the charge of assault with intent to commit rape. From these sentences, defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General Millard R. Rich, Jr. for the State.*

*William S. Geimer, Assistant Public Defender, for defendant appellant.*

MOORE, Justice.

[1] Defendant first contends the court erred in ordering defendant committed to a State hospital on 5 December 1968.

[2] Defendant is a man of above average intelligence, a high school graduate who had completed three semesters of business college. He received specialized medical training in the Army Medical Corps and had been stationed in Womack General Hospital. Originally he was arrested on three charges of first degree burglary and one charge of assault on a female with intent to

commit rape. At his trial on 5 December 1968 on one bill of indictment charging burglary in the first degree and on another charging assault on a female with intent to commit rape, defendant entered pleas of not guilty. While a jury was being selected, the defendant, through his privately retained counsel, withdrew his pleas of not guilty and entered a plea of guilty as charged in both cases. Judge Canaday carefully examined defendant concerning the voluntariness of his plea and found that it was freely and voluntarily entered. Such findings were supported by the evidence. Where the evidence supports the findings that defendant entered a plea of guilty voluntarily and with full knowledge of his rights, the acceptance of the plea will not be disturbed. *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S.Ct. 1463 (1970) ; *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785, 90 S.Ct. 1458 (1970) ; *State v. Caldwell,* 269 N.C. 521, 153 S.E. 2d 34; *State v. Coleman,* 266 N.C. 355, 146 S.E. 2d 30; *Wiggins v. Smith,* 434 F. 2d 245 (5th Cir., 1970) ; 2 Strong's N.C. Index 2d, Criminal Law § 23, p. 511.

On the plea of guilty to the charge of burglary in the first degree, the trial court had no discretion as to punishment. Punishment by life imprisonment was prescribed by statute, G.S. 15-162.1, then in force but repealed in 1969. On the plea of guilty to the charge of assault on a female with intent to commit rape, Judge Canaday could have imposed sentence of not less than one nor more than fifteen years. But before sentence was pronounced, defendant's counsel moved that defendant be sent to a mental hospital under the provisions of G.S. 122-84 and offered the testimony of Dr. Meymandi in support of this motion. The court then entered the order of 5 December 1968 committing the defendant to the hospital for treatment. This order was entered at defendant's request. No exception was taken to its entry, and the defendant does not attempt to show that he was prejudiced by being sent to a hospital for treatment before being imprisoned.

[1, 3-5]  An assignment of error not supported by an exception is ineffectual and will not be considered on appeal. *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345; *State v. Thompson,* 267 N.C. 653, 148 S.E. 2d 613; *State v. Maness,* 264 N.C. 358, 141 S.E. 2d 470; *Tynes v. Davis,* 244 N.C. 528, 94 S.E. 2d 496; 3 Strong's N.C. Index 2d, Criminal Law § 161, p. 113. Since no

exception was taken to the entry of Judge Canaday's order of 5 December 1968, there is no basis for this assignment of error, and no question of law is presented to this Court for decision. *Knutton v. Cofield*, 273 N.C. 355, 160 S.E. 2d 29; *Tynes v. Davis, supra; Riysbee v. Perkins*, 242 N.C. 502, 87 S.E. 2d 926. See Rules 19(3) and 21, Rules of Practice in the Supreme Court, 254 N.C. 783. Nevertheless, due to the seriousness of the case, we have considered this assignment. It is evident from the record that had defendant been sent to prison before treatment, he would have been a menace to others. Judge Canaday properly concluded that defendant should be treated before imprisonment. The procedure used and the words contained in the order committing defendant to the hospital were perhaps unfortunate. If defendant had sufficient mental capacity to plead, he had sufficient mental capacity to receive sentence. The action of the trial judge in accepting the plea but then sending defendant to the hospital for treatment before sentencing created an apparent contradiction. The record shows defendant had ample mental capacity both to plead and to be sentenced. To avoid any apparent conflict, the trial judge would have been better advised to have sentenced defendant after accepting the plea and then to have requested the prison authorities to give defendant such medical treatment as he might require. Doubtless the trial judge in entering his order worded it in such a manner as to assure defendant the benefit of treatment under G.S. 122-84. Conceding *arguendo* that the entry of the order committing defendant to a State hospital was error, it is impossible to see how defendant was prejudiced thereby. Such error, if any, was harmless. Harmless error is not sufficient to justify a new trial. The defendant must show that the error was material, prejudicial, and amounted to a denial of some substantial right. *State v. Turner*, 268 N.C. 225, 150 S.E. 2d 406; *State v. Honeycutt*, 237 N.C. 595, 75 S.E. 2d 525; 3 Strong's N.C. Index 2d, Criminal Law § 167.

[6, 7] Defendant next assigns as error the court's denial of his motion to withdraw the plea of guilty and to allow him to enter a plea of not guilty. He first contends that the plea of guilty was obtained through duress. The record does not so indicate. There is no evidence of duress, and the defendant did not attempt to offer such evidence. Judge Canaday at the 5 December 1968 hearing, after examining defendant, expressly

found that the plea was entered freely, understandingly, and voluntarily, without undue influence, compulsion or *duress*. ". . . (O)rdinarily one Superior Court judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action. . . ." 2 Strong's N.C. Index 2d, Courts § 9, p. 446; *Bank v. Hanner*, 268 N.C. 668, 151 S.E. 2d 579; *Stanback v. Stanback* 266 N.C. 72, 145 S.E. 2d 332; *In re Burton*, 257 N.C. 534, 126 S.E. 2d 581. In the absence of any evidence of duress, Judge Cooper properly overruled the motion on that ground.

Defendant next contends that defendant lacked mental capacity to enter his plea. This contention is without merit.

[8] A clear distinction must be drawn between the insanity which precludes responsibility for crime and insanity which precludes trial. 21 Am. Jur. 2d, Criminal Law § 63 (1965). The test for insanity which precludes responsibility for crime is the ability to distinguish the difference between right and wrong. *State v. Propst*, 274 N.C. 62, 161 S.E. 2d 560; *State v. Spence*, 271 N.C. 23, 38, 155 S.E. 2d 802, 813; *State v. Johnson*, 256 N.C. 449, 124 S.E. 2d 126; *State v. Willis*, 255 N.C. 473, 121 S.E. 2d 854; *State v. Scales*, 242 N.C. 400, 87 S.E. 2d 916; 2 Strong's N. C. Index 2d, Criminal Law § 5.

[9] "In determining a defendant's capacity to stand trial, the test is whether he has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to co-operate with his counsel to the end that any available defense may be interposed." 21 Am. Jur. 2d, *ibid; State v. Propst, supra;* 2 Strong's N. C. Index 2d, Criminal Law § 29. If a defendant is capable of understanding the nature and object of the proceedings against him and to conduct his defense in a rational manner, he is sane for the purpose of being tried, though on some other subject his mind may be deranged. This is the common law rule to determine a defendant's capacity to stand trial. 21 Am. Jur. 2d, *ibid.*

[10] Defendant's own witness, Dr. Meymandi, testified on 2 December 1968 that defendant was without psychosis (not insane) ; that he knew right from wrong and was able to assist his attorney in his defense of these cases. The evidence for the State specifically shows that defendant had no mental dis-

turbance which would interfere with his ability to plead to the bill of indictment. It further shows that defendant knew the difference between right and wrong, that he was able to assist in his own defense, and was fully aware of the consequences of his acts.

Dr. Meymandi further testified that defendant was suffering from a sociopathic personality, which he explained meant that defendant was without conscience. In *People v. McElroy*, 125 Ill. App. 2d 237, 260 N.E. 2d 410 (1970), the Court, in a case involving the mental capacity of the defendant to plead guilty, said: " . . . While a defendant may possess a sociopathic personality and suffer from psychological and social disturbances, these circumstances without more are not sufficient to raise a *bona fide* doubt as to his competence. The *People v. Hammond*, Ill. 1970, 259 N.E. 2d 44."

Defendant was charged with three capital crimes and another serious felony. On advice of counsel of his own choosing, defendant decided to enter a plea of guilty in one of the capital cases and the felony charge, and accept life imprisonment, as then provided by law on such plea, rather than face the dangers posed by three capital charges. The fact that the trial court, on motion of defendant and on recommendation of defendant's doctor, prescribed treatment for the defendant before imposing punishment does not warrant a new trial.

In the proceeding in Superior Court, we find no prejudicial error.

No error.