STATE OF NORTH CAROLINA v. WAYMARE BILLUPS

No. 63

(Filed 6 January 1981)

### 1. Criminal Law § 91.4— continuance to obtain new counsel — denial proper

The trial court did not err in denying defendant's request, made just prior to jury selection, that he be granted a continuance in order to have time to discuss with his family the hiring of private counsel because he lacked confidence in his court appointed attorney.

### 2. Criminal Law § 98.3— shackled defendant — no abuse of discretion

The trial court did not err in ordering that defendant be restrained in the courtroom by the use of shackles, and there was no merit to defendant's argument that the shackling was improper absent a showing that he had previously tried to escape or evidence of a planned escape, since the evidence tended to show that defendant was charged with crimes of violence; he was 29 years old and apparently in good health; other serious charges were pending against him, including an appeal from a conviction the previous week for which he received a 40 to 50 year prison sentence; only one deputy was available to serve as bailiff and provide security in the courtroom; and there was a warrant outstanding charging him with escape from another jurisdiction.

### 3. Criminal Law § 98.3— shackling of defendant-curative instructions sufficient

There was no merit to defendant's argument that the trial court's curative instruction on shackling was insufficient since the trial judge told the jury that defendant was being restrained only because the sheriff's department was short-handed; no mention was made of the nature of the charges nor was any reference made to defendant's record or character; the judge asked all who would be unable to overlook the shackling of defendant to raise their hand and none did; and the trial judge specifically instructed the jury to put the fact of defendant's shackles out of their mind in determining his guilt.

### 4. Criminal Law § 66.16— photographic identification procedure — independent origin of in-court identification

In a prosecution for robbery and assault with a dangerous weapon, trial court did not err in allowing an in-court identification of defendant by the prosecuting witnesses where the witnesses identified defendant by choosing his picture from among six photographs shown them by police; one witness had the opportunity to see defendant when she admitted him to her home; both witnesses were with defendant for at least five minutes in a well-lighted room and approximately twenty minutes elsewhere in their house at the time of the crime; one witness stated clearly that her in-court identification of defendant was of independent origin and based entirely on her observations on the night of the crime; and the other witness's statement that the intruder looked like defendant was properly allowed as identification testimony.

**5. Criminal Law § 71— shorthand statement of fact**

The trial court did not err in failing to strike a robbery victim's statement, "that's when he robbed me," since such testimony was admissible as a shorthand statement of fact.

**6. Criminal Law § 101— prosecuting witness in jury room — no mistrial required**

The trial court did not err in denying defendant's motion for a mistrial made on the ground that one of the prosecuting witnesses entered the jury room during a recess at the conclusion of the trial but prior to the charge of the court, since the trial judge determined that the prosecuting witness knocked at the door of the jury room, came through the room and used the restroom, but did not communicate with any of the jurors.

Justice BROCK took no part in the consideration or decision of this case.

Justice EXUM dissenting.

Justice COPELAND joins in the dissenting opinion.

ON appeal by defendant from judgments entered by *Bruce, Judge,* at the 11 February 1980 Criminal Session of Superior Court, PERQUIMANS County.

Defendant was charged in separate indictments, proper in form, with the crimes of robbery with a dangerous weapon, a violation of G.S. 14-87, and assault with a deadly weapon with intent to kill inflicting serious injury, a violation of G.S. 14-32. Defendant pleaded not guilty to both charges.

Prior to trial, defendant made a motion to suppress the victims' identification of him. After a voir dire hearing at trial, at which the State presented four witnesses, the judge made findings of fact and conclusions of law and denied the motion.

At trial, the State's evidence tended to show that on the night of 19 February 1979 Mr. and Mrs. Isaac Lowe were in their home in Hertford, North Carolina. A little after 9:00 p.m., a man knocked at the Lowes' door and asked about renting a room from the Lowes. Mrs. Lowe admitted him to the living room where he began to talk with her husband while she resumed watching television. After several minutes of conversation, the man drew a gun on the Lowes and demanded money. He removed approximately $86.00 from a wallet he took from Mr. Lowe, and also picked up $100.00 in cash which was lying on a table. He then ordered the Lowes to go upstairs.

Mr. Lowe reached the top of the stairs first, and retrieved a

pistol which he had hidden under the pillow on his bed. As the intruder reached the top of the steps, Mr. Lowe testified he fired once at his feet hoping to scare him away. The intruder fired three times at Mr. Lowe, wounding him in the head and neck. As Mrs. Lowe began to scream for help, the intruder fled.

Both the Lowes identified the defendant in court as the man who robbed them and shot Mr. Lowe.

By way of rebuttal, defendant offered the testimony of his mother. She stated that to the best of her knowledge her son was not in Hertford at the time of the crimes. Defendant's sister offered similar testimony.

The jury returned a verdict of guilty on both charges. The defendant was sentenced to life imprisonment for the armed robbery and to a term of ten years for assault with a deadly weapon inflicting serious injury. Defendant appeals the life sentence as a matter of right; his motion to bypass the Court of Appeals on the latter conviction was allowed on 16 July 1980.

Where necessary, other relevant facts will be discussed in the body of this opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Marilyn R. Rich for State-appellee.*

*Walter G. Edwards, Jr. for defendant-appellant.*

CARLTON, Justice.

From numerous exceptions at trial, defendant brings forward nine assignments of error. We find no prejudicial error and affirm.

I.

[1] Defendant charges error in the refusal of the trial court to grant defendant's request, made just prior to jury selection in February 1980, that he be granted a continuance. Defendant complained to Judge Bruce that he lacked confidence in his court-appointed attorney, and asked that he be allowed time to discuss with his family the hiring of private counsel. Citing the fact that the defendant had been indicted since October, and thus had had adequate time to secure other counsel, Judge Bruce denied the request.

Before this Court, defendant recognizes that a motion to continue is normally addressed to the sound discretion of the trial

judge, and hence is customarily reviewable only for abuse of that discretion. 4 Strong's N.C. Index 3d, Criminal Law § 91.1; *State v. Rigsbee*, 285 N.C. 708, 208 S.E.2d 656 (1974).

Where a constitutional right is involved though, as defendant claims here by virtue of the sixth amendment's guarantee of effective assistance of counsel, a motion to continue is deemed on appeal to present a question of law, and is therefore reviewable. *State v. Brower*, 289 N.C. 644, 224 S.E.2d 551 (1976). If a constitutional violation is shown, the burden shifts to the State to prove that such error was harmless beyond a reasonable doubt. G.S. § 15A-1443 (b) (1978). If the State does not do so, the court cannot find it to be harmless error, and the conviction must be reversed. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Here however, we do not reach the question of harmless error because defendant has not presented a cogent argument that he was denied his constitutional right to counsel when the trial court denied his motion for a continuance. Our own examination of the record leads us to conclude that the defendant was adequately represented. This assignment is overruled.

II.

Defendant next assigns as error the failure of the trial court to sustain three objections made by defendant during the testimony of Mrs. Lowe. In the challenged testimony, Mrs. Lowe stated that she was not sure how good her husband's hearing was on the side where he had been shot; that she can still see the defendant's face when she closes her eyes; and that she let the defendant take the money because he had a gun. While defendant may be correct in his assertion that these answers were in places speculative or unresponsive, neither the defendant nor the record shows that the errors were material or prejudicial. Absent such a showing defendant is not entitled to a new trial. *State v. Jones*, 278 N.C. 259, 179 S.E.2d 433 (1971).

III.

**[2]** By his next two assignments of error, defendant contends that the court erred in ordering that the defendant be restrained in the courtroom by the use of shackles, and that the curative instruction given the jury by the court was insufficient. On its own motion the trial court made the following findings of fact before ordering that the defendant be so restrained: (1) that the defendant was charged

with armed robbery and assault with intent to kill inflicting serious injury; (2) that defendant had other serious charges pending against him and had the previous week received a sentence of not less than forty nor more than fifty years on a different charge; (3) that there was an outstanding warrant for escape against the defendant issued by the State of Maryland; and (4) that because many of the sheriff's employees were involved in a special venire which had been summoned from Perquimans County to Dare County there was only one deputy sheriff to serve as bailiff and security officer for the court. Based on those findings the defendant was ordered shackled until such time as more deputies might become available.

Defendant's primary contention before this Court was that Judge Bruce's decision was based only on circumstances within the courtroom. The defendant argues that absent a showing that he had previously tried to escape or evidence of a planned escape, Judge Bruce abused his discretion in ordering that defendant be shackled. We disagree.

The seminal decision on this question, recognized as controlling by both sides, is *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976). Justice Huskins, writing for the Court, presented an exhaustive analysis of the issue here considered. As stated there, the general rule is that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary instances. However, as stated in *Tolley*, the general rule does not lead to the conclusion that every trial in shackles is fundamentally unfair. *Id.* at 367, 226 S.E.2d at 367. Rather, "the rule against shackling is subject to the exception that the trial judge, in the exercise of his sound discretion, may require the accused to be shackled when such action is necessary to prevent escape, to protect others in the courtroom or to maintain order during trial." *Id.* at 367, 226 S.E.2d at 367. The trial judge "is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes." *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir. 1970), *cert. denied*, 401 U.S. 946, 91 S. Ct. 964, 28 L. Ed.2d 229 (1971).

In reaching a decision as to whether a defendant should be shackled, *Tolley* lists a broad range of factors including "the seriousness of the present charge against the defendant; . . . his age and physical attributes; . . . past escapes or attempted escapes; . . . the

nature and physical security of the courtroom; and the adequacy and availability of alternative remedies." 290 N.C. at 368, 226 S.E.2d at 368. Furthermore, "[t]he information upon which the judge acts need not come from evidence formally offered and admitted at the trial." *Id.*

Applying those criteria to the case *sub judice*, it is clear that Judge Bruce properly framed his order as required by *Tolley.* The record shows that the defendant was charged with crimes of violence; that he was 29 years old and apparently in good health; that other serious charges were pending against him including an appeal from a conviction the previous week for which he received a forty to fifty year prison sentence; that only one deputy was available to serve as bailiff and provide security in the courtroom; and that there was a warrant outstanding charging him with escape from another jurisdiction.

Defendant argues that because a warrant is not a conviction, the existence of an outstanding warrant was irrelevant and should not have been considered by the trial court. While evidence of a warrant prior to conviction is improper for certain purposes in a criminal proceeding, that rule clearly does not control this situation. The existence of such a warrant for escape from another jurisdiction is probable cause to believe the defendant had escaped from custody on a previous occasion. Defendant's propensity to escape must be one of the overriding considerations in determining whether a defendant should be shackled. Any reasonable evidence of such propensity may properly be considered by the trial court on this question. Thus, Judge Bruce properly considered the existence of the warrant for escape in reaching his decision.[1]

Defendant's further argument that restraint is proper only if there is evidence of a past or planned escape attempt is also not persuasive. "[A] trial court need not wait until an escape or other violence has occurred in its presence before exercising its discretion." *State v. Johnson*, 594 P.2d 514, 526-27 (Ariz. 1979). Where there appears some reasonable basis upon which the judge concluded, in the exercise of his sound discretion, that it was necessary

---

[1]In *Patterson v. Estelle*, 494 F.2d 37 (5th Cir. 1974) the court cited the fact that there was an outstanding charge of escaping from custody against the defendant as one factor justifying the handcuffing and chaining of the prisoner during trial. *Id.* at 38.

for the defendant to be shackled during trial, we cannot say, as a matter of law, that the trial judge abused his discretion. *State v. Tolley*, 290 N.C. at 371, 266 S.E.2d at 369.

Even if we were to find that shackling of the defendant was improper, that alone would not mandate reversal. The United States Supreme Court has recognized that "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant . . . ." *Illinois v. Allen*, 397 U.S. 337, 344, 90 S. Ct. 1057, 1061, 25 L. Ed. 2d 353, 359 (1970). But, in considering the analogous issue of jail clothing, that Court has also indicated the fact that a defendant appears at trial in prison clothing may not always be prejudicial. *Estelle v. Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). For that reason the harmless error rule has often been applied to cases where a defendant has appeared for trial so garbed. *Thomas v. Beto*, 474 F.2d 981 (5th Cir.), *cert. denied*, 414 U.S. 871, 94 S. Ct. 95, 38 L. Ed. 2d 89 (1973); *Watt v. Page*, 452 F.2d 1174 (10th Cir. 1971), *cert. denied*, 405 U.S. 1070, 92 S. Ct. 1520, 31 L. Ed. 2d 803 (1972). Apparently "it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Estelle v. Williams*, 425 U.S at 508, 96 S. Ct. at 1695, 48 L. Ed. 2d at 133. It is, of course, impossible for us to know whether the shackling of the defendant in this case had the adverse effect complained of by defense counsel, or whether perhaps it evoked sympathy for the defendant from the jury. *See State v. Reid*, 559 P. 2d 136 (Ariz. 1976), *cert. denied*, 431 U.S. 921, 97 S. Ct. 2191, 53 L. Ed. 2d 234 (1977). Suffice it to say that no showing of prejudice has been presented to us, nor do we perceive any.

Nor does the fact that the trial court did not employ less restrictive security measures afford defendant a sufficient basis for relief.[2] There is nothing in the record to indicate that other means were available, and no such other means were proposed by the defendant. Defendant's failure to suggest althernatives to the shackling precludes his arguing on appeal that less restrictive but equally effective means were available. *See State v. Tolley*, 290 N.C. at 370, 226 S.E.2d at 369. Moreover, the trial court limited its order to such time as other deputies might be available, an indication of

---

[2]Among the cases holding that the mere fact of handcuffing does not alone warrant reversal *see United States v. Kress*, 451 F.2d 576 (9th Cir. 1971) and *McDonald v. United States*, 89 F.2d 128 (8th Cir. 1937).

the court's recognition of the gravity of its decision to shackle the defendant. We hold that under the authority of *State v. Tolley, supra,* the trial court did not abuse its discretion by ordering, after making sufficient findings of fact as also required by *Tolley,*[3] that the defendant be restrained.

**[3]** Defendant's argument that the curative instruction given by the court was insufficient is equally without merit for two reasons. First, an examination of Judge Bruce's instruction to the jury,[4] given just prior to the beginning of trial, shows that he told the jury that the defendant was being restrained only because the sheriff's department was shorthanded.[5] No mention was made of the nature of the charges nor was any reference made to defendant's record or character. The judge asked all who would be unable to overlook the shackling of the defendant to raise their hand. None did. The trial judge also specifically instructed the jury to put the fact of defendant's shackles out of their minds in determining his guilt. This instruction fully complied with the applicable tenets of *State v. Tolley,* 290 N.C. at 369, 226 S.E.2d at 368-69. Second, we note that although defendant complains that the instruction was not repeated to the jury at the time other jury instructions were given, defendant did not request an additional instruction. The burden was on him to do so. *State v. Tolley,* 290 N.C. at 371, 226 S.E.2d at 370; *accord, State v. Stewart,* 276 N.W.2d 51 (Minn. 1979); *State v. Cassel,* 180 N.W.2d 607 (Wisc. 1970). In the absence of such a request, the trial court did not err in not repeating the instruction. *Cf. Patterson v. Estelle,* 494 F.2d 37 (5th Cir.), *cert. denied,* 419 U.S. 871, 95 S. Ct. 130, 42 L. Ed. 2d 110 (1974) (where no request for instruction concerning shackling requested, state court did not err in failing to give one). The trial in this case lasted less than two days. Defend-

---

[3]We note in passing that *State v. Tolley* does not require, as defendant urges, that the trial court conduct a full evidentiary hearing before ordering the defendant restrained. All that is required is that the record reflect the reasons for the judge's action. 290 N.C. at 368, 226 S.E.2d at 368.

[4]In relevant part, Judge Bruce explained the shackling by saying, "The reason for this is that the Sheriff's Department has all of its men over in Dare County and there in (sic) only one Sheriff who can serve as Bailiff and also act as security officer for the courtroom."

[5]A similar instruction which explained defendant's appearance in handcuffs and leg irons as necessary because trial was being held in a makeshift courtroom was upheld in *People v. Burnett,* 59 Cal. Rptr. 652 (Court of Appeal 1967).

ant's mere speculation that the curative instruction was not sufficiently fresh in the jury's mind is without merit. These assignments of error are overruled.

## IV.

**[4]**  By his next assignment of error, defendant complains of the trial court's allowing an in-court identification of the defendant by the prosecuting witnesses. Just prior to in-court identification by both witnesses of defendant as the perpetrator of the crimes, a voir dire hearing of each witness was held. In light of their testimony on voir dire, defendant claims that the subsequent in-court identifications were inherently unreliable.

The voir dire testimony of the witnesses reveals that they first identified the defendant by choosing his picture from among six photographs shown them by police on 21 March 1979. Defendant challenges this procedure as constitutionally remiss. We do not agree. The use of a photographic line-up has been approved by this Court on several occasions. *State v. Davis,* 290 N.C 511, 227 S.E.2d 97 (1976). *State v. Waddell,* 289 N.C. 19, 220 S.E.2d 293 (1975), *death sentence vacated,* 428 U.S. 904, 96 S. Ct. 3211, 49 L. Ed. 2d 1210 (1976); *State v. McPherson,* 276 N.C. 482, 172 S.E.2d 50 (1970). Defendant's assignment of error as to the manner in which the photographic identification was conducted is without merit. *State v. Davis,* 294 N.C. 397, 241 S.E.2d 656 (1978).

Conviction based on eyewitness identification at trial following a pre-trial photographic identification will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). Applying that standard to the case before us, we find that the in-court identification of the defendant was clearly proper.

A close examination of the voir dire testimony reveals that Mrs. Lowe had the opportunity to see the defendant when she admitted him to the house; and that she and Mr. Lowe were with him for at least five minutes in a well-lighted room and for approximately 20 minutes elsewhere in the house. Mrs. Lowe stated clearly that her in-court identification of the defendant was of independent origin and based entirely on her observations that night. Thus its admission was proper. *State v. Bass,* 280 N.C. 435,

186 S.E.2d 384 (1972). Mr. Lowe's statement that the intruder "looked like" the defendant was properly allowed as identification testimony. *State v. Brown*, 280 N.C. 588, 187 S.E.2d 85 (1972). Any lack of certainty in his identification goes to the weight and not the admissibility of the testimony. *State v. Bridges*, 266 N.C. 354, 146 S.E.2d 107 (1966). We find the trial court acted properly in allowing the identification testimony.

## V.

**[5]** By his next assignment of error, defendant contends the court erred in failing to allow defendant's motion to strike Isaac Lowe's statement, "That's when he robbed me . . . ." Such shorthand statements of fact have been upheld by this Court before. *See, e.g., State v. Goss*, 293 N.C. 147, 235 S.E.2d 844 (1977); *State v. Sneeden*, 274 N.C. 498, 164 S.E.2d 190 (1968). Defendant's argument is without merit.

## VI.

The defendant next alleges that the trial court committed error by allowing the State to introduce a purse and its contents found in the upstairs of the Lowe's home. While we agree with defendant that the items apparently had no relevance to the case, that alone does not warrant reversal. Rather, "the appellant must show error positive and tangible, that has affected his rights substantially and not merely theoretically, and that a different result would have likely ensued." *State v. Cross*, 284 N.C. 174, 200 S.E.2d 27 (1973), quoting *State v. Cogdale*, 227 N.C. 59, 40 S.E.2d 467 (1946). Defendant has made no such showing.

## VII.

**[6]** Defendant next urges that the denial of his motion for a mistrial by the trial court was improper. The record shows that Mrs. Lowe, one of the prosecuting witnesses, entered the jury room during a recess at the conclusion of trial but prior to the charge of the court. Apparently she did so in order to use the bathroom. Defendant promptly moved for a mistrial. Judge Bruce examined first Mrs. Lowe and then one of the jurors, chosen at random from the jury room. Their testimony established that Mrs. Lowe kocked at the door, came through the room, and used the restroom. She did not communicate with any of the jurors. On these facts the trial court, exercising its sound discretion, properly denied the motion

State v. Billups

for a mistrial. *See State v. Gaines*, 283 N.C. 33, 194 S.E.2d 839 (1973); *State v. Shedd*, 274 N.C. 95, 161 S.E.2d 477 (1968).

We have carefully considered all other errors brought forward by the defendant and find no reason to disturb the result achieved in the trial division. A close examination of the record shows that defendant had a fair trial, free from prejudicial error.

No error.

Justice BROCK took no part in the consideration or decision of this case.

Justice EXUM dissenting.

I respectfully dissent from the majority opinion because I believe there were insufficient grounds upon which to order, over defendant's objection, his shackling at trial. The shackling thus denied defendant due process of law under both the Fourteenth Amendment to the Federal Constitution and Article I, Section 19, of the State Constitution.

Due process requires that persons accused of a crime receive the "fundamental liberty" of a fair and impartial trial, and that such persons be afforded the presumption of innocence. *Drope v. Missouri*, 420 U.S. 162 (1975). To implement this presumption courts must guard against factors which may "undermine the fairness of the fact-finding process" and thereby dilute "the principle that guilt is to be established by probative evidence and beyond a reasonable doubt...." *Estelle v. Williams*, 425 U.S. 501, 503 (1976), *quoted in State v. Tolley*, 290 N.C. 349, 365, 226 S.E. 2d 353, 366 (1976). It follows, then, that the presumption of innocence requires the garb of innocence, for "regardless of the ultimate outcome, or of the evidence awaiting presentation, every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man." *Eaddy v. People*, 115 Colo. 488, 492, 174 P. 2d 717, 718 (1946), *quoted in State v. Tolley, supra.* As recognized by the United States Supreme Court in *Illinois v. Allen*, 397 U.S. 337, 344 (1970):

> "But even to contemplate [binding and gagging a defendant], much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a *last resort.* Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's

feelings about the defendant, but the use of this technique
is itself something of an affront to the very dignity and
decorum of judicial proceedings that the judge is seeking
to uphold." (Emphasis supplied.)

Accordingly, this Court in *Tolley* held that a criminal defendant is
entitled to appear at trial free from shackles except in *extraordi-
nary circumstances* where such action is *necessary* to prevent
escape, to protect persons in the courtroom, or to maintain order
during trial. The trial court in determining whether such extraor-
dinary circumstances do in fact exist may consider various "mater-
ial circumstances." *State v. Tolley, supra.*[1]

The majority, in upholding the shackling here, notes that
defendant was charged with crimes of violence, was 29 years old
and in good health, and had recently been convicted on other
charges and sentenced to a lengthy prison term; that only one
deputy was available to provide for courtroom security; and that
there was an outstanding warrant from Maryland charging defend-
ant with escape from a penal institution. I respectfully submit the
simple existence of all the factors listed does not justify shackling
defendant without some other indication that shackling was in fact
necessary to prevent his escape, to protect persons in the courtroom,
or to maintain order during trial. In so doing I recognize that the
propriety of shackling is originally entrusted to the discretion of the
trial court. Although the abuse of discretion standard is inherently
flexible, it is not without limits. As noted by this Court in *Tolley*,
"sound judicial discretion means 'a discretion that is not exercised
arbitrarily or wilfully, but with regard to what is right and equita-
ble under the circumstances and the law, and directed by the reason
and conscience of the judge to a just result.'" *State v. Tolley, supra*,
290 N.C. 349, 367, 226 S.E. 2d 353, 367-68, *quoting Langnes v. Green*,
282 U.S. 531, 541 (1931). It is my opinion that the trial court here
exceeded the limits of sound judicial discretion.

---

[1]As noted in *Tolley*: "The 'material circumstances' which the trial judge may
consider in exercising his sound discretion include, *inter alia*, the seriousness of the
present charge against the defendant; defendant's temperament and character; his
age and physical attributes; his past records; past escapes or attempted escapes, and
evidence of a present plan to escape; threats to harm others or cause a disturbance;
self-destructive tendencies; the risk of mob violence or of attempted revenge by
others; the possibility of rescue by other offenders still at large; the size and mood of
the audience; the nature and physical security of the courtroom; and the adequacy
and availability of alternative remedies." 290 N.C. at 368, 226 S.E. 2d at 368.

There is no indication in the record that defendant at the time of his trial posed a threat to any person in the courtroom, was likely to be unruly or disruptive, or was likely to try to escape. All indications are that he would do none of these things. That defendant is charged with serious crimes, is young and healthy, and has recently been convicted of other serious crimes does not justify the shackles. Although these are among the "material circumstances" which in a proper case may be considered, our courts regularly try young, healthy defendants who have criminal records and who are on trial for serious offenses; yet we do not shackle them. These trials include, of course, even those defendants who have escaped from penal institutions. That only one deputy was available cannot be seized upon as a justification. The absence of adequate courtroom staff was an administrative problem which the trial court should not have solved at the expense of defendant's right to a fair trial.[2] The most telling circumstance of all is that defendant sat quietly through his uneventful trial on other charges held the previous week and at his preliminary hearing.

It thus appears that the trial court, seeking to solve a shortage of deputies problem, simply decided *sua sponte* to shackle defendant unnecessarily.[3] Neither the state nor any representative of the county, so far as the record reveals, advised the court of feelings of insecurity or any felt need for restraining defendant.

The facts in *State v. Tolley, supra,* 290 N.C. 349, 226 S.E. 2d 353, the only decision rendered by this Court as to the propriety of shackling and in which we unanimously approved the shackling, are significantly different from those here. In *Tolley* the sheriff, charged with custody of defendant during trial, expressed the opinion that shackles were necessary. In *Tolley* defendant tried to escape during the preliminary hearing. Importantly, also in *Tolley,* defendant's counsel did not object to the shackling when explicitly

---

[2]The proper solution to this problem would have been for the trial court to have secured other personnel such as state highway patrolmen, if possible; if not, the trial should have been delayed until sufficient personnel could be secured.

[3]The court instructed the jury, in pertinent part, as follows: "One more thing, ladies and gentlemen, I want you people who are on the venire to also listen to this. Some of you may have noticed that the defendant is partially restrained in that he has on what are commonly referred to as shackles or leg irons. The reason for this is that the Sheriff's Department has all of its men over in Dare County and there is only one sheriff who can serve as Bailiff and also act as security officer for the courtroom."

asked if he wished to do so. Thus, while we noted in *Tolley* that defendant was charged with serious offenses, and was young and in good physical condition, these "material circumstances" were clearly secondary to the prior escape attempt during the preliminary hearing, the sheriff's request, and the lack of objection by defendant himself, through counsel.

The thrust of *Tolley* is that while shackling does not always violate a defendant's right to due process under the law, it is a remedy to be used only in extraordinary situations. The simple existence of several of the "material circumstnces" there mentioned does not automatically justify shackling. Only in the extraordinary event that these circumstances *together with* other actions by defendant himself or concern expressed by those in charge of his prosecution or custody indicate that shackling is necessary to prevent his escape, to protect persons in the courtroom, or to maintain òrder during trial, should a remedy so damaging to the trial's impartiality be used.

Finally, the majority notes that "no showing of prejudice has been presented to us, nor do we perceive any." This Court, however, has stated that "in the absence of a showing of necessity therefor, compelling the defendant to stand trial while shackled is *inherently prejudicial* in that it so infringes upon the presumption of innocence that it 'interferes with a fair and just decision of the question of . . . guilt or innocence.'" (Emphasis supplied.) *State v. Tolley, supra*, 290 N.C. at 366, 226 S.E. 2d at 367, *quoting Blair v. Commonwealth*, 171 Ky. 319, 328, 188 S.W. 390, 393 (1916). The state contends that even if the shackling was improper the error was cured by the trial judge's instruction. My view is that if the shackling was not justified in the first place the error cannot be cured by instructions to the jury. We do a great disservice to the dignity and integrity of our courts when we permit the needless shackling of criminal defendants. I vote for a new trial for defendant at which he will not be shackled unless the circumstances then are such that shackling is required.

Justice COPELAND joins in this dissent.