**Waymare BILLUPS, Appellant,**

v.

**Samuel GARRISON, Warden; Attorney General of North Carolina, Appellees.**

**No. 83–6105.**

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1983.

Decided Oct. 6, 1983.

Rehearing and Rehearing En Banc Denied Jan. 30, 1984.

Martha E. Johnston, Greensboro, N.C. (Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief), for appellant.

Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of N.C., Raleigh, N.C., on brief), for appellees.

Before HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

North Carolina prisoner, Waymare Billups, appeals from an order of the district court, dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Finding this appeal to be without merit, we affirm.

## I.

On February 19, 1979, Isaac Lowe and his wife, Laura, both in their seventies, were robbed at gunpoint in their home. . During the robbery, Mr. Lowe was shot in the head and neck. Billups was subsequently charged with armed robbery and felonious assault. He pleaded not guilty and was tried by a jury in the Superior Court for Perquimans County, North Carolina.

As a security measure, Billups, who was 29 years old and apparently in good health, was restrained by leg irons throughout his trial over the objection of his attorney. Before ordering the defendant restrained, the trial judge, the Honorable R. Michael Bruce, made findings of fact which may be summarized as follows:

(1) the defendant was charged with armed robbery and assault with intent to kill, inflicting serious injury; (2) defendant had other serious charges, including another charge of armed robbery, pending against him and had the previous week received a sentence of not less than forty nor more than fifty years on a different charge; (3) there was an outstanding warrant for escape against the defendant issued by the State of Maryland; and (4) because many of the sheriff's employees were involved in a special venire which had been summoned from Perquimans County to Dare County there was only one deputy sheriff to serve as bailiff and security officer for the court.

Later, in a certificate filed with the district court in Billups' habeas proceeding, Judge Bruce further elaborated on the conditions which he believed warranted shackling in this case. He noted that in addition to the deputy sheriff, two city policemen and a highway patrolman were present in the courthouse during Billups' trial. Fur-

thermore, the state in its answers to Billups' interrogatories filed in connection with this proceeding, responded that a total of five armed officers were believed to be present in and about the courtroom. However, as Judge Bruce's certificate points out, the additional officers all were assigned duties other than attending to the needs of the court or guarding Billups. Therefore, as Judge Bruce stated in his certificate, he concluded that the court was "one law enforcement officer short of being able to provide security to prevent the escape of the defendant Waymare Billups without his being shackled."

Before the trial began, Judge Bruce, acknowledging that some members of the jury venire might have observed Billups wearing shackles, instructed the entire jury panel as follows:

> The reason for [the restraints] is that the Sheriff's Department has all of its men over in Dare County and there is only one Sheriff who can serve as Bailiff and also act as security officer for the courtroom. Now, is there any member of the jury panel as it is now constituted that feels that they could not put the fact that the Defendant is shackled out of their mind for the purpose of weighing the evidence or determining the issue of the Defendant's guilt or any other issue in this case. If you feel that would prejudice you, please raise your hand. I am instructing you that if you are selected to sit on this jury to put that fact out of your mind for the purpose of determining the Defendant's guilt or any other issue in this case. If you can't follow the instruction, raise your hand.

There is no indication in the record that any of the prospective jurors asked to be excused. The record further indicates that this was the only occasion in which any of the jurors may have observed Billups in restraints.[1]

The jury convicted defendant of both charges. Billups appealed to the North Carolina Supreme Court, attacking his conviction on several grounds and specifically citing the trial court's decision to restrain him during trial. A majority of the state Supreme Court upheld Billups' conviction and concluded that under the circumstances shackling of the defendant was not improper. *State v. Billups,* 301 N.C. 607, 272 S.E.2d 842, 846–848 (1981).

Billups then filed the instant action, seeking a writ of habeas corpus on the ground that the use of restraints deprived him of a fair and impartial trial and infringed upon the presumption of innocence. The district court dismissed this action and Billups appeals.

## II.

■ On appeal, Billups contends that the shackling prejudiced his right to a fair trial. He further argues that in light of the record in this case the findings of the trial court were inadequate to support the decision to use restraints. Finally, he complains that the decision to use shackles in this instance constituted an abuse of discretion. We disagree and conclude that the shackling imposed under the circumstances present in this case neither deprived Billups of his right to a fair trial nor constituted an abuse of the trial court's discretion.

Both this Court and the North Carolina Supreme Court have previously addressed the issues raised in this appeal and have reached the conclusion that under appropriate circumstances a trial court in its discretion may order the use of restraints without depriving a defendant of his right to a fair

---

1. Judge Bruce further certified to the district court that:

   "After the decision was made that Mr. Billups was to be shackled, we made every effort to see that the defendant was not required to walk into or out of the courtroom in the presence of the jury so as not to call attention to the fact that he was shackled. To this end, efforts were made after each recess to see that the defendant was taken in or out of the courtroom after the jury had been sent to their room. The only time the defendant was required to walk in shackles in the presence of the jurors was when he was initially brought into the courtroom for jury selection and the venire was present in the spectator section of the courtroom."

trial. *See United States v. Samuel*, 431 F.2d 610, 433 F.2d 663 (4th Cir.1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971); *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976).[2]

In *Samuel*, we recognized that because an accused is presumed innocent until proven guilty, he is ordinarily entitled to be relieved of handcuffs, or other unusual restraints. Nevertheless, we also recognized that the maintenance of courtroom security and the rights of society at large to be protected from the guilty are proper and necessary factors for the court to consider in any trial. Thus, we held that "in appropriate circumstances, the accused's right to the indicia of innocence before the jury must how to the competing rights of participants in the courtroom and society at large. *Cf. Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)." *Samuel*, 431 F.2d at 615. We went on to acknowledge the crucial role given to the trial court's discretion in balancing these competing interests:

> The cases traditionally state that accommodation between these conflicting interests lies within the discretion of the [trial] judge. It is he who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes." (citations omitted).[3]

Finally, in order for a reviewing court to determine whether a trial court has abused its discretion by imposing unusual security measures, we concluded that the reasons for requiring them must be disclosed and that counsel be afforded the opportunity to argue that such measures are unnecessary. *Id.*

Applying the standards which we approved in *Samuel* to the facts of this case, we find no such gross abuse of the trial judge's discretion in ordering Billups to be restrained by leg irons for the duration of his trial as to amount to constitutional error. This decision was based upon information made available to the court before Billups' trial. Among other things, the trial judge knew that Billups had other serious charges, including another charge of armed robbery, pending against him and that just the week before he had received a sentence of 40 to 50 years imprisonment. Moreover, the trial judge was made aware of an outstanding warrant for escape issued against Billups by another state. The reasons for imposing restraints were adequately documented by the trial judge in his findings of fact and Billups' counsel had the opportunity to and did in fact protest the decision to use shackles.

Nor are we persuaded by appellant's argument that the record, when viewed as a whole, fails to justify his shackling. The record, as amplified by the discovery conducted in the habeas proceeding, reveals that the Sheriff's Department, which normally provides courtroom security in North Carolina, was, as trial judge Bruce found, shorthanded the week of the trial; that the additional uniformed, armed officers, who were either in the courtroom or adjacent to it in the courthouse, were assigned duties other than guarding Billups; that the courtroom design made it an unsecure area; and that Billups posed more than an average escape risk. Finally, the record reveals that the jurors observed Billups in shackles at most one time, that Judge Bruce issued appropriate cautionary instructions to ensure that Billups would not be prejudiced by that fact, and that steps were taken to

---

**2.** We note that the North Carolina Supreme Court in *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976), relied heavily on our decision in *Samuel* in analyzing the employment of restraints in appropriate cases. We further note that both *Samuel* and *Tolley* were cited by the North Carolina Supreme Court in *State v. Billups*, 301 N.C. 607, 272 S.E.2d 842 (1981), for

its conclusion that shackling in this particular case was justified.

**3.** In *United States v. Thompson*, 432 F.2d 997, 998 (4th Cir.1970), *cert. denied*, 401 U.S. 944, 91 S.Ct. 955, 28 L.Ed.2d 226 (1971), we reiterated that "the ultimate decision [to impose restraints] rests within the sound discretion of the judge."

ensure that during trial the jurors would not see Billups in shackles.

## III.

■ In view of his determination in this case that courtroom security was inadequate, we are unable to say that the trial judge committed constitutional error in finding it necessary to restrain Billups during his trial. A trial judge must be given wide latitude in arriving at his decision to impose restraints, and to base his decision on the information available to him at the time of trial. Given the facts of this case, we can only conclude that the trial court carefully weighed all relevant factors, took appropriate precautionary measures, and did not so exceed the bounds of his discretion by ordering Billups to be tried in leg irons as to commit constitutional error. Accordingly, the district court's order, dismissing Billups' petition for a writ of habeas corpus, is hereby affirmed.

AFFIRMED.

ERVIN, Circuit Judge, dissenting:

Waymare Billups was required to stand trial in shackles. On its own motion, the state superior court ordered the restraints, and its exercise of discretion was upheld by the North Carolina Supreme Court over a dissent written by Justice Exum and joined by Justice Copeland. *State v. Billups*, 301 N.C. 607, 272 S.E.2d 842 (1981). Because I agree with Justice Exum that the shackling order was an unconstitutional abuse of discretion, I respectfully dissent.

The trial judge's order was based primarily on his belief that only one deputy sheriff was available to provide security in the courtroom. The judge made four findings that, in his view, justified shackling Billups:

the serious nature of the crime for which Billups was to be tried; the existence of other serious charges against Billups, and his felony conviction the week before; the existence of a Maryland escape warrant outstanding against Billups; and the availability of only one deputy sheriff to serve in the courtroom. In ordering the restraints, however, the judge stated that they were necessary "until such time as more deputies are made available." The judge once again mentioned the shortage of deputies in his instruction concerning the shackles. It seems clear, therefore, that it was the "shortage of deputies problem," *Billups*, 272 S.E.2d at 851 (Exum, J., dissenting), which was crucial to the trial judge's decision.

The state now concedes that the trial judge was mistaken and that there were actually four or five armed officers present during the trial. This concession undermines the essential factual predicate for the shackling order and is not answered by the *post hoc* justification that the additional officers were not assigned to guard Billups. Furthermore, even if I accepted that explanation of the trial judge's factual error, I do not think his order can be reconciled with the governing rule of law. A trial judge may order the use of visible methods of restraint only as a "last resort," *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970), and "in extraordinary circumstances." *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353, 366 (1976). Because "a trial in shackles is inherently prejudicial," the trial judge has discretion to order the defendant restrained only when "it is shown by the State to be necessary notwithstanding any such prejudice." *Tolley*, 226 S.E.2d at 367. The state has never made this showing.[1] The Constitution does

---

1. As Justice Exum's dissent makes plain, none of the suggested reasons for shackling Billups will support the trial judge's decision:

There is no indication in the record that defendant at the time of his trial posed a threat to any person in the courtroom, was likely to be unruly or disruptive, or was likely to try to escape. All indications are that he would do none of these things. That defendant is charged with serious crimes, is young and

healthy, and has recently been convicted of other serious crimes does not justify the shackles. Although these are among the "material circumstances" which in a proper case may be considered, our courts regularly try young, healthy defendants who have criminal records and who are on trial for serious offenses; yet we do not shackle them. These trials include, of course, even those defendants who have escaped from pe-

not permit the placing of visible restraints on a criminal defendant—restraints which can "mark [the defendant] as an obviously bad man or . . . suggest that the fact of his guilt is a foregone conclusion," *United States v. Samuel,* 431 F.2d 610, 614-5 (4th Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971)—for the mere convenience of the government.

The state's position is further weakened by the fact that there were numerous less intrusive remedies available to the trial judge. He could have sent for additional officers or pressed one or more of the city or state officers waiting in the courtroom or the courthouse into service as courtroom deputies. We are told that they were assigned "other duties" but the record is silent as to what those duties were. It is not unreasonable to suspect that some of these armed officers were there as witnesses in this or other cases, and would be in or around the courtroom in any event. Deputizing some of them would not have created any major problems for them or interfered with their duties. As another alternative, the trial judge could have continued the case for whatever period of time was necessary to bolster the courtroom security force. I would even suggest that he could have considered recalling some of the Perquimans County deputies from Dare County, for after all, their principal responsibilities were in their assigned jurisdiction.[2]

Even if shackling was the only viable solution, a view I reject, the trial judge did not see to it that Billups's rights were fully protected. As I read the trial judge's certification, he admits that *after the decision was made to shackle Billups,* Billups was required to walk in shackles in the presence and sight of the jurors when he was being initially brought into the courtroom for jury selection. This exposure was completely unnecessary, for all prospective jurors could have been excluded from the courtroom long enough to bring Billups in and seat him at counsel table. By use of table placements or baffleboards, his leg irons could have been concealed from the jurors' view. The trial judge apparently consistently excused the jury before Billups was moved during the course of the trial, but by then the damage had already been done.

Unlike the majority, I take no comfort from the trial judge's so-called curative instructions. In the first place, these instructions served to call attention to the fact that Billups was in shackles, thereby causing any juror who had failed to notice his condition to become aware of it. They were directed to the panel as a group and as any experienced trial judge or lawyer knows, jurors so addressed rarely ever respond to such inquiries. Arguably, they also violated the spirit, if not the letter, of N.C.G.S. § 15A–1031(1) which states in part:

> If the judge orders a defendant restrained he must:
>
> (1) Enter in the record out of the presence of the jury and in the presence of the person to be restrained and his counsel, if any, the reasons for his action.

The curative instruction given to the jury contains some of the reasons for the trial judge's actions.

I am also troubled by the fact that most of the cases cited by the majority to uphold the trial judge's actions are cases involving disruptive defendants: Billups simply fails to qualify as such. The use of shackles is a harsh, "last ditch" measure which should

---

nal institutions. That only one deputy was available cannot be seized upon as a justification. The absence of adequate courtroom staff was an administrative problem which the trial court should not have solved at the expense of defendant's right to a fair trial. The most telling circumstance of all is that defendant sat quietly through his uneventful trial on other charges held the previous week and at his preliminary hearing. It thus appears that the trial court, seeking to solve a shortage of deputies problem, simply decided *sua sponte* to shackle defendant unnecessarily. Neither the state nor any representative of the county, so far as the record reveals, advised the court of feelings of insecurity or any felt need for restraining defendant. *Billups,* 272 S.E.2d at 851 (Exum, J., dissenting).

**2.** *See Billups,* 272 S.E.2d at 851 n. 2 (Exum, J., dissenting).

not be tolerated in a fact situation like this one.

I am reluctant to conclude that the trial judge abused his discretion in this case. However, when it is clear that there were numerous less prejudicial solutions to the judge's perceived problem, all of which would have been preferable to the one he chose and which could have been employed without jeopardizing the security he sought, I am compelled to conclude that there was an abuse of discretion.

I would reverse the judgment of the district court and remand the case with instructions to issue a writ of habeas corpus.