STATE OF NORTH CAROLINA v. JAMES GIBBS, A/K/A JIMMY DEAN

No. 100

(Filed 12 June 1979)

**1. Criminal Law § 66.16— pretrial photographic identifications—in-court iden-**
**tifications of independent origin**

Evidence was sufficient to support the trial court's conclusion that a
photographic identification procedure followed by law enforcement officers was
"fair, proper, legal and without suggestion on the part of anyone," and, in any
event, "it was not so impermissibly suggestive as to give rise to a very
substantial likelihood of irreparable misidentification"; furthermore, the fact
that one victim had only a brief time to observe her assailant went to the
credibility of her identification testimony, not its admissibility.

**2. Criminal Law § 89.2— corroborative evidence—admissibility**

There was no merit to defendant's contention that the trial court erred in
admitting evidence to corroborate evidence that had been disallowed or
stricken where the evidence complained of, testimony by a police officer con-
cerning one victim's identification statements, did in fact corroborate the vic-
tim's testimony which was not objected to at trial.

**3. Criminal Law §§ 158, 169.2— failure of record on appeal to show er-**
**ror—curative instruction of trial court**

Where defendant's sister who testified on his behalf was cross-examined
as to whether she had shot her husband on an earlier occasion, defendant was
not entitled to introduce into evidence the court record showing that the
charge against his sister was dismissed on the ground that the prosecutor, at
the time he questioned the sister, was holding the court record in his hand and
asking questions based thereon, since there was nothing in the record on ap-
peal to show what document, if any, the prosecutor was holding at the time he
was cross-examining the witness; furthermore, any harm resulting from the
cross-examination of the sister concerning the shooting was cured when the
trial court ordered the testimony stricken and instructed the jury not to con-
sider it.

**4. Criminal Law § 102.5— district attorney—questions about suppressed**
**evidence—no improper conduct**

Defendant was not entitled to a mistrial based on allegedly improper con-
duct of the district attorney in questioning defendant about stolen items found
in his home where defendant's pretrial motion to suppress the evidence was
granted; defendant himself offered evidence concerning the stolen items; the
trial court then ruled that the district attorney could cross-examine defendant
about the property; and defendant did not object to the court's ruling.

**5. Burglary and Unlawful Breakings § 5.8; Assault and Battery § 14.4; Robbery**
**§ 4.3— first degree burglary—assault with firearm—armed robbery—suffi-**
**ciency of evidence**

In a prosecution for first degree burglary, armed robbery and assault with
a deadly weapon, evidence was sufficient to be submitted to the jury where it

tended to show that during the evening a window pane in the victims' house was shattered and one victim was shot in the shoulder; defendant, who was standing outside the window, extended his hand, in which he held a pistol, into the victims' den; and defendant then took one victim's wallet and money which the victim placed on a table just inside the window.

APPEAL by defendant from *Allsbrook, J.,* 10 April 1978 Session of WAYNE Superior Court.

Upon pleas of not guilty defendant was tried on bills of indictment charging him with (1) first-degree burglary of the dwelling house of Mr. and Mrs. A. G. Pelt, (2) armed robbery of Mr. Pelt and (3) assaulting Mrs. Pelt with a deadly weapon with intent to kill inflicting serious injury. Evidence presented by the state tended to show:

On the evening of 12 November 1977 Mr. and Mrs. Pelt were in their home in Goldsboro. Mr. Pelt was a pharmacist and had practiced his profession for more than 40 years. From about 6:00 to 6:30 they ate their evening meal after which they retired to their den. On the west end of the den was a standard size window with several panes in the lower panel. Mrs. Pelt was sitting in a swivel chair doing needlework and watching television. Mr. Pelt was lying on a couch watching television, the television set being located a short distance from the side of the window. It was dark outside but the den was brightly lighted.

At around 6:45 p.m. the Pelts heard a comparatively loud noise come from the direction of their garage which was in their backyard; thinking the noise was made by their neighbor working on his car, they thought no more about it. Very shortly thereafter one of the lower panes in their den window was shattered and Mrs. Pelt was shot in her right shoulder. The Pelts then saw a young black male standing at the window with his hand holding a small pistol extended into the den. Although they did not know defendant at the time, they identified him at trial as the intruder.

Following the shooting Mr. Pelt asked defendant what he wanted and he replied that he wanted money. Mr. Pelt then told defendant that he had $20 in his wallet and defendant ordered him to put his wallet on the table just inside the window. Because of the gun being pointed at him, Mr. Pelt did as he was ordered. Defendant reached inside the room, took the wallet and left.

Police and a rescue unit were called and Mrs. Pelt was taken to the hospital where she was treated for gunshot injuries for some two weeks. It was determined that the bullet was lodged between her spine and her lungs but it was not removed from her body.

Following the shooting Mrs. Pelt's automobile, which was parked in the garage back of the house, was found to have a shattered window. The car had been placed in the garage around 4:30 or 5:00 p.m. and the glass was not broken at that time. Several days after Mrs. Pelt returned home from the hospital, her son's dog found the shell of a .22 bullet in a chair near the den window.

On 12 December 1977 Goldsboro police stopped one Al Thomas and removed a Colt .22 caliber pistol from his person. Thomas testified that he purchased the gun for $20 from defendant some three weeks prior to said date. The gun was introduced as an exhibit and expert testimony was presented showing that the .22 caliber shell found in the Pelt home was fired by the pistol which Thomas purchased from defendant.

Defendant testified as a witness for himself. He also presented his sister who corroborated his testimony that he was not in the vicinity of the Pelt residence on the evening in question. He testified that he was 17 years of age at the time of the alleged offenses and previous thereto he had been convicted of motor vehicle violations, trespassing and two counts of assault. On cross-examination he admitted to participating with Thomas in the breaking and entering of the M. R. Barfield residence at which time a pistol, bullets and other property were stolen.

Other evidence necessary to an understanding of the questions raised on appeal will be alluded to in the opinion.

The jury found defendant guilty of burglary and armed robbery as charged and guilty of assault with a deadly weapon resulting in serious injury. The court entered judgments imposing life sentences in the burglary and robbery cases, said sentences to run concurrently; and a sentence of 10 years in the assault case, this sentence to begin at expiration of the other sentences. Defendant appealed and we allowed a motion to bypass the Court of Appeals in the assault case.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Patricia B. Hodulik, for the State.*

*David B. Brantley for defendant-appellant.*

BRITT, Justice.

[1]  By his first assignment of error, defendant contends the trial court erred in failing to suppress evidence of a pretrial photographic identification of him by Mrs. Pelt and in permitting her to identify him at trial. This assignment has no merit.

Before a jury was empaneled, the court conducted a *voir dire* hearing at which Mr. and Mrs. Pelt testified. Following the hearing the court made findings of fact and concluded that the photographic identification procedure followed by the law enforcement officers was "fair, proper, legal and without suggestion on the part of anyone", and, in any event "it was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The court concluded that the photographic identifications of defendant by Mr. and Mrs. Pelt and their subsequent identifications of him during the *voir dire* did not violate due process or any of defendant's constitutional rights; therefore, the evidence was admissible.

The trial court properly conducted a *voir dire* hearing in the absence of the jury to determine the validity of the identification testimony of Mr. and Mrs. Pelt. 4 Strong's N.C. Index 3d, Criminal Law § 66.18. The findings of fact made by the court are supported by competent evidence presented at the hearing, therefore, they are conclusive on this court. *Ibid.* § 66.20. The findings of fact fully support the conclusion of law that none of defendant's constitutional rights were violated in the identification procedures and that the evidence was admissible.

Defendant's argument is directed primarily at the probative value of Mrs. Pelt's testimony due to her limited opportunity to observe the intruder at the time of the offenses. While the length of time Mrs. Pelt observed her assailant was brief, she was very convincing in her testimony that she formed a definite mental image of him, due particularly to his "glaring" eyes and unusual teeth. We hold that her testimony was admissible, its credibility being a question for the jury.

**[2]**  By his assignment of error number 4B, defendant contends that the trial court erred in admitting evidence to corroborate evidence that had been disallowed or stricken. There is no merit in this assignment.

Among other authorities defendant cites 1 Stansbury's N.C. Evidence (Brandis Rev.) § 52. While we recognize the rule espoused by defendant, namely, that if testimony is never offered, or when offered is excluded, evidence offered to corroborate it is inadmissible, we hold that the rule was not violated in the instance complained of.

This contention relates to identification testimony by Mr. Pelt who initially described defendant as a light-skinned black male. On or about the date defendant was arrested—some three or four weeks after the offenses were committed—the police conducted an experiment at the Pelt home to show that a face at the den window in the nighttime, as seen from the lighted den, would appear lighter than the face actually was. In carrying out the experiment, lighting in the den was arranged as it was on the night of the crimes and Mr. Pelt viewed the faces of two black police officers, Isler and Sharpe, just outside the window.

With respect to the experiment, Mr. Pelt was asked if he made any statement about the skin tone of the two black police officers. Without objection he answered: "The only statement I remember making was that if there was any difference the light in the room might have given it a little lighter tone." He was then asked about his statement as to Officer Isler in particular and when the witness said, "I believe I told him—" defendant objected and the objection was sustained.

Detective Stocks of the Goldsboro Police Department was asked if at the time of the experiment Mr. Pelt made any statement concerning the appearance of the two black officers when observed outside the window. Defendant objected and the court gave the usual instruction limiting the purpose of the answer to corroboration of the testimony of Mr. Pelt if in fact it did corroborate. Det. Stocks testified: "Mr. Pelt stated that Sharpe and Isler both looked several shades lighter than they were through the window than they did inside the den. They appeared to be lighter."

Clearly, the testimony of Det. Stocks that Mr. Pelt stated that "they appeared to be lighter" corroborated Mr. Pelt's testimony that "the light in the room might have given it a little lighter tone". "Slight variances in corroborating testimony do not render such testimony inadmissible". *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429 (1960). As to the testimony of Det. Stocks that Mr. Pelt said, "that Sharpe and Isler both looked several shades lighter than they were through the window than they did inside the den", we think any discrepancy in this statement and what Mr. Pelt testified to was taken care of by the court's limiting instruction. Furthermore, defendant did not move to strike Det. Stocks' answer or any part thereof.

We further point out that Mr. and Mrs. Pelt testified to other physical features of defendant that were more distinctive than his "color tone". These included his "wide open eyes", his narrow teeth, and a decayed or disfigured tooth in the front of his mouth. Assuming, *arguendo*, there is merit in defendant's contention regarding the challenged testimony, we perceive no significant prejudice in view of the other identification testimony and the evidence relating to the pistol.

[3] Defendant assigns as error the failure of the trial court to allow his witness, LaRue Jones, to explain certain conduct inquired about on cross-examination and to admit into evidence a document related thereto. We find no merit in this assignment.

On cross-examination the witness admitted that she had been tried and convicted twice for shoplifting. Without objection she was then asked if she shot her husband on 10 September 1973 and she replied that she did not. On redirect-examination defense counsel asked the witness: "Mrs. Jones, I will ask you about this warrant they've been talking about a few minutes ago—if that was dismissed?" The court sustained the state's objection to the question.

After Mrs. Jones testified, defendant gave his testimony. Following that, defendant offered two birth certificates as evidence. The court then instructed the jury to disregard all testimony relating to the shooting of LaRue Jones' husband on 10 September 1973. Defendant then offered as evidence: "Defense Exhibit No. 3" but the court sustained the state's objection to the evidence.

Defendant argues that he was entitled to introduce into evidence the court record showing that the charge against his sister for shooting her husband was dismissed; that when the prosecutor was questioning the witness about the shooting he was holding the court record in his hand and asking questions based on the record. This argument is not supported by the record on appeal. There is nothing in the record before us to show what document, if any, the prosecutor was holding at the time he was cross-examining the witness and there is nothing to show what "Defense Exhibit No. 3" was. It is well settled that it is the duty of the appellant to see that the record on appeal is properly made up. 4 Strong's N.C. Index, Criminal Law § 154. "The record imports verity and the court is bound on appeal by the record as certified and can judicially know only what appears of record." *Ibid.* § 158.

As to the merits of the contention, we think any harm accruing to defendant by questioning his sister about shooting her husband was cured when the trial court ordered the testimony stricken and instructed the jury not to consider it. "Where the trial court sustains an objection or withdraws incompetent testimony and instructs the jury not to consider it, any prejudice is ordinarily cured. . . ." *Ibid.* § 169.2.

By his eighth assignment of error, defendant contends that the trial judge expressed opinions on the evidence in three parts of his charge to the jury, in violation of G.S. 15A-1222 (formerly G.S. 1-180). We note that defendant failed to comply with Rule 10(b)(2) of the Rules of Appellate Procedure, 287 N.C. 671, 699, which requires that "[a]n exception to instructions given the jury shall identify the portion in question by setting it within brackets or by any other clear means of reference." In fact, the only semblance of an exception to the charge set forth in the record is under the grouping of exceptions and assignments of error wherein "EXCEPTION NO. 19" states "that Judge Allsbrook erred in his charge to the jury".

Although questions relating to the jury charge are not properly presented, due to the gravity of the charges against defendant, we have carefully reviewed the court's instructions to the jury, with particular reference to the portions complained of in defendant's brief, and conclude that the instructions are free from prejudicial error.

State v. Gibbs

[4]   We find no merit in defendant's assignment of error contending that the trial judge abused his discretion in denying defendant's motions for a mistrial and for a new trial based on improper conduct of the district attorney.

In connection with this contention defendant complains of several acts by the prosecutor. The first of these relates to the prosecutor's questioning defendant about property stolen by him from the M. R. Barfield residence. Prior to trial defendant moved to suppress evidence relating to the property taken from the Barfield home and found in defendant's home on the ground that defendant's home was illegally searched. The motion was allowed due to defects in the search warrant. However, at trial defense counsel questioned defendant about some of the Barfield property and brought out that state's witness Al Thomas had aided in the Barfield burglary and received the Colt .22 pistol mentioned above as part of his share of the loot.

Before cross-examining defendant, the district attorney inquired of the trial judge in the absence of the jury the extent to which he could question defendant about items taken from the Barfield residence. The district attorney stated that while there had been a pretrial order suppressing evidence by the state regarding the property found in defendant's home, he felt defendant had waived protection provided by the order by giving testimony concerning the property. The court asked defense counsel his position as to questions related to the property taken from the Barfield home. Counsel's answer was, "to be frank, I think it ought to go in."

Thereupon the court ruled that since defendant had testified on direct examination about breaking and entering the Barfield home and stealing property therefrom, the district attorney would be allowed to cross-examine him about those crimes and property found in defendant's home that came from the Barfield home. Defendant did not object to this ruling.

The district attorney then asked defendant about various items allegedly taken from the Barfield home and found in defendant's home. Every item defendant was questioned about was included on an inventory prepared by the police officer in connection with execution of the search warrant. Following the questions about those items, the district attorney then asked de-

fendant what else he took out of the Barfield residence. The court sustained defendant's objection to the question. Defense counsel then moved for a mistrial "for the misbehavior of the district attorney relating to the agreement that we had concerning the items that would be asked about". The court denied the motion.

Defendant's contention that the district attorney acted improperly has no foundation whatsoever. The only agreement we can glean from the record is that the prosecutor would confine his questions to items set forth on the inventory. The specific items the prosecutor asked about were on the inventory. There were several other items on the list and we see nothing improper in the prosecutor asking the witness what else he removed from the Barfield residence.

We have reviewed the other two incidents that defendant contends constituted improper conduct on the part of the district attorney and conclude that there was no impropriety in them.

[5]  Defendant assigns as error the failure of the trial court to grant his motions to nonsuit all charges. This assignment has no merit. The only question with any semblance of logic that might be raised with respect to the sufficiency of the evidence on all elements of all charges would be the quesiton of "entry" in the burglary count. The evidence showed that the extent of defendant's entry into the house was the extension of his hand or hands through the space where the window was broken.

In 13 Am. Jur. 2d, Burglary § 10, p. 327, we find:

"Literally, entry is the act of going into the place after a breach has been effected, but the word has a broad significance in the law of burglary, for it is not confined to the intrusion of the whole body, but may consist of the insertion of any part for the purpose of committing a felony. Thus, an entry is accomplished by inserting into the place broken the hand, the foot, or any instrument with which it is intended to commit a felony. . . ."

See also: State v. Chappell, 185 S.C. 111, 193 S.E. 924 (1937), and State v. Whitaker, 275 S.W. 2d 316 (Mo. 1955).

We approve the quoted statement from American Jurisprudence. We hold that the evidence was sufficient to survive all motions for nonsuit and to support the verdicts returned.

We have considered the other assignments of error argued in defendant's brief but conclude that they too are without merit. We hold that defendant received a fair trial, free from prejudicial error.

No error.