STATE OF NORTH CAROLINA v. DAVID MARTIN MANCUSO

No. 591A86

(Filed 3 February 1988)

### 1. Criminal Law § 138.21— second degree murder—especially heinous aggravating factor

The evidence showed excessive brutality and psychological suffering not normally present in second degree murders so as to support the trial court's finding that a murder was especially heinous, atrocious or cruel where it showed that defendant had been tormenting the victim for months and attempted to break into her house; the victim was genuinely afraid of defendant and began to carry a knife to protect herself; just before the shooting, defendant picked up the victim and put her in her car through the window while she kicked her legs; witnesses heard the victim yell "No, David. No," and heard her scream just before she was shot; at some point after defendant put the victim in the car and before he shot her, she started the car engine; defendant shot the victim seven times; and the victim did not die immediately and her heart was still beating when the rescue squad arrived.

### 2. Criminal Law § 138.21— especially heinous aggravating factor—pretrial order rejecting as basis for death penalty—not binding at sentencing hearing for second degree murder

A pretrial order rejecting the especially heinous, atrocious or cruel aggravating factor as a basis for imposing the death penalty for a murder was not binding upon the trial judge in a sentencing hearing after defendant was convicted of second degree murder, and the trial judge thus could find as an aggravating factor that the second degree murder was especially heinous, atrocious or cruel.

### 3. Weapons and Firearms § 3— discharging firearm into occupied property—firearm itself inside property

A firearm is discharged "into" occupied property within the meaning of N.C.G.S. § 14-34.1 although the firearm itself is inside the property so long as the person discharging it is not inside the property.

### 4. Homicide § 15.2— murder case—involuntary commitment procedures irrelevant

The trial court in a murder case properly excluded expert testimony on involuntary commitment procedures because such testimony was irrelevant. Even if the State had asked several questions of another witness in the same subject area without objection, the trial court was not required to admit additional evidence of the same fact if it was irrelevant.

### 5. Criminal Law § 5— test of insanity—M'Naghten Rule

The Supreme Court refused to abandon the M'Naghten Rule as the test of insanity as a defense to a criminal charge.

**6. Criminal Law § 5.1; Homicide § 7— order of insanity issue**

   It is not error for the trial court to submit the issue of guilt before the issue of insanity in a murder case.

**7. Criminal Law § 138.7— denial of presentence diagnostic study**

   The trial court did not abuse its discretion in denying defendant's request for a presentence diagnostic study pursuant to N.C.G.S. § 15A-1332 before sentencing him for second degree murder where the court heard extensive testimony during the trial concerning defendant's mental condition and performance on various psychological tests.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a life sentence imposed by *Hobgood (Robert), Judge,* at the 4 August 1986 Session of Superior Court, DURHAM County. This Court allowed the defendant's motion to bypass the Court of Appeals for an appeal of a sentence of less than life. Heard in the Supreme Court 7 December 1987.

The defendant was tried for first degree murder and discharging a firearm into occupied property. Evidence presented at trial tended to show the following: On 9 January 1986 at 4:30 p.m., Norma Russell, a senior at Northern High School in Durham County, was walking to her car after cheerleading practice. As she reached her car, the defendant, also a senior at Northern, approached her. They spoke for a few minutes and the defendant picked her up and put her in her car. He then shot her in the chest seven times with a .22 revolver. Norma Russell became unconscious and died shortly thereafter on the way to Durham General Hospital.

The evidence also tended to show that the defendant had been infatuated with Ms. Russell since the eighth grade. He had often asked her out during their high school years, and she had repeatedly rebuffed him. She had, however, always liked him and been kind to him.

By the fall of their senior year, the defendant's infatuation with Ms. Russell had become an obsession. He continued to ask her out, and left her notes and presents. On one occasion he went to her house when she was there alone and tried to break in. These things frightened Ms. Russell considerably. He drew tombstones reading "Norma Jean Russell" and "R.I.P." He wrote a note reading "call home, go to McDonald's, go to gameroom, go to Northern, kill Norma, go home." Prior to killing the victim, the

defendant made a tape in which he explained why he "did willfully and joyfully murder and kill Norma Russell."

Extensive psychiatric testimony revealed that the defendant was suffering from an atypical psychosis with an encapsulated delusion focusing on Norma Russell. The defendant's childhood was traumatic, marked by severe illnesses and family troubles.

The defendant was convicted of second degree murder and firing into an occupied vehicle. He was sentenced to life imprisonment for murder and three years to be served consecutively for the conviction of firing into an occupied vehicle. The defendant appealed.

*Lacy H. Thornburg, Attorney General, by Joan Byers, Special Deputy Attorney General, and Steven F. Bryant, Assistant Attorney General, for the State.*

*Hall, Hill, O'Donnell, Taylor, Manning & Shearon, by Thomas C. Manning and John B. O'Donnell, Jr., for defendant appellant.*

WEBB, Justice.

[1] In his first assignment of error, the defendant contends the trial court erred during the sentencing phase of the trial in finding as an aggravating factor that the offense was especially heinous, atrocious or cruel. The defendant argues that the evidence does not support a finding of this factor.

In determining this question, "the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*" *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983). We find the following facts significant: The defendant had been tormenting the victim for months, to the point of attempting to break into her house. She was genuinely afraid of him; she began to carry a knife to protect herself. Just before the shooting, Brian Agner saw the defendant pick up the victim and put her in her car through the window, while she kicked her legs. Agner heard the victim yell "No, David. No." Coach Inskip heard her screams just before she was shot. At some point after the defendant put her in the car and before he shot her, she started the car engine. It can certainly be inferred

that throughout this ordeal, the victim was aware of the danger she faced and experienced tremendous emotional suffering. The defendant shot the victim seven times. "Where proof of one act constituting an offense is sufficient to sustain a defendant's conviction, multiple acts of the same offense are relevant to . . . whether the offense charged was especially heinous, atrocious or cruel." *Blackwelder*, 309 N.C. at 413, 306 S.E. 2d at 786. The victim did not die immediately; Brian Agner saw her "jittering back and forth" even after the defendant had driven away from the scene, and her heart was still beating when the rescue squad arrived. Whether death was immediate or delayed is relevant to whether the crime was especially heinous, atrocious or cruel. *State v. Hines*, 314 N.C. 522, 335 S.E. 2d 6 (1985). We hold that this evidence, taken together, shows excessive brutality and psychological suffering not normally present in second degree murders, and is therefore sufficient to support a finding that the offense was especially heinous, atrocious, or cruel.

[2] The defendant further argues that the trial judge's finding of this aggravating factor was erroneous because of a contrary finding in a pretrial order by Judge Herring. On 9 June 1986 a pretrial hearing was held on the defendant's motion to determine whether any aggravating factor existed under N.C.G.S. § 15A-2000(e) which would support the death penalty. The State submitted only one factor: "The capital felony was especially heinous, atrocious and cruel." Based on the evidence presented at the hearing, Judge Herring entered an order rejecting this factor. Thus the case was tried as a non-capital case.

The defendant argues that this order is binding on Judge Hobgood at the sentencing phase of trial. The defendant relies on the rule set forth in *State v. Jones*, 278 N.C. 259, 179 S.E. 2d 433 (1971), that "[o]rdinarily one Superior Court judge may not modify, overrule or change the judgment of another Superior Court judge previously made in the same action." *Id.* at 266, 179 S.E. 2d at 438. That rule is inapposite to the question presented here. Judge Hobgood did not modify, overrule or change Judge Herring's order; the case is still a non-capital case. However, Judge Herring's findings, relating to whether the case should be tried as a capital case under N.C.G.S. § 15A-2000, are not binding on Judge Hobgood, who has heard all the evidence in the case and

must determine the defendant's punishment under the Fair Sentencing Act. The defendant's assignment of error is overruled.

**[3]** The defendant next contends the trial court erred in denying his motion to dismiss the charge of discharging a firearm into occupied property. The defendant argues the evidence is insufficient to support the guilty verdict, in that the evidence tends to show that the gun was inside the victim's car when it was discharged. The defendant argues that if the gun was inside the vehicle it cannot have been discharged "into" the vehicle, within the meaning of N.C.G.S. § 14-34.1.

That statute provides, in pertinent part, as follows:

Any person who willfully or wantonly discharges or attempts to discharge:

. . . .

(2) A firearm into any . . . vehicle . . . while it is occupied is guilty of a Class H felony.

The evidence is uncontradicted that at the time the defendant shot Ms. Russell, she was seated inside her car and he was standing outside of it.

The purpose of N.C.G.S. § 14-34.1 is to protect occupants of the building, vehicle or other property described in the statute. *State v. Williams*, 284 N.C. 67, 199 S.E. 2d 409 (1973). We cannot believe that the Legislature intended that a person should escape liability for this crime by sticking his weapon inside the occupied property before shooting. We hold that a firearm can be discharged "into" occupied property even if the firearm itself is inside the property, so long as the person discharging it is not inside the property.

**[4]** The defendant next assigns error to the trial court's refusal to admit the testimony of his witness Assistant Attorney General Augusta Turner. The defendant sought to have Ms. Turner testify on the State's procedures for treating people involuntarily committed to the State's mental health facilities. Upon the State's objection, a voir dire was held to determine the admissibility of Ms. Turner's testimony. Although the trial court found that Ms. Turner was an expert on involuntary commitment law, it sustained the State's objection because of the subject matter about

which she planned to testify. The defendant contends this was error. The defendant argues that the State "opened the door" to this subject matter by asking several questions of Dr. Donald Fidler in the same subject area.

We find no error in the trial court's ruling. N.C.G.S. § 8C-1, Rule 702 provides, in pertinent part, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion." A trial judge has "wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E. 2d 370, 376 (1984). The defendant in the present case has made no showing that Ms. Turner's testimony on involuntary commitment procedures would help the jury understand the evidence, or determine a fact in issue. Thus, the defendant has failed to show an abuse of the trial court's discretion.

The defendant's "opening the door" argument is without merit. The case he relies on, *Glace v. Town of Pilot Mountain*, 265 N.C. 181, 143 S.E. 2d 78 (1965), stands for the proposition that if evidence of a certain fact is admitted without objection, it is not prejudicial error to admit other evidence of the same fact. This Court, however, has never held that if evidence of a certain fact is admitted without objection, the trial court is required to admit any additional evidence of the same fact, whether or not it is relevant. This assignment of error is overruled.

[5] The defendant next assigns error to the trial court's denial of his motion to use the American Law Institute's definition of insanity in instructing the jury, rather than the "M'Naghten Rule" definition. The defendant is asking this Court to abandon the M'Naghten Rule definition of insanity, which North Carolina has adhered to for many years. Under this definition, the test of insanity as a defense to a criminal charge is whether the defendant was laboring under such a defect of reason from disease or deficiency of mind at the time of the alleged act as to be (1) incapable of knowing the nature and quality of his act, or (2) incapable of distinguishing between right and wrong with respect to such act. *State v. Evangelista*, 319 N.C. 152, 353 S.E. 2d 375 (1987). We

decline to abandon the "M'Naghten Rule" in determining the insanity defense.

[6]  The defendant next contends the trial court erred in denying his request that the issue of insanity be submitted as the first issue for the jury's consideration, and the issue of guilt be submitted as the second issue, only to be reached if the insanity issue was decided against the defendant. As the defendant points out, this Court approved of this procedure in *State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305 (1975). However, we held in that case that failure to submit the issues in that order is not ground for a new trial. Furthermore, we have since held that it is not error to submit the issue of guilt before the issue of insanity. *Evangelista*, 319 N.C. 152, 353 S.E. 2d 375; *State v. Linville*, 300 N.C. 135, 265 S.E. 2d 150 (1980). We believe the order in which the insanity issue is submitted should be left to the discretion of the superior court. This assignment of error is overruled.

[7]  The defendant next contends the trial court erred in denying the defendant's request for a presentence diagnostic study pursuant to N.C.G.S. § 15A-1332. That statute provides, in pertinent part, "when the court desires more detailed information as a basis for determining the sentence to be imposed than can be provided by a presentence investigation, the court may commit a defendant to the Department of Correction for study for the shortest period necessary to complete the study, not to exceed 90 days, . . . ."

During trial, the court heard extensive testimony regarding the defendant's mental condition, including that of two psychiatrists and two psychologists. The court heard evidence about the defendant's performance on various psychological tests, including the MMPI, the Rorschach, the PAS, and the TAT. The court clearly did not "desire more detailed information." We can find no abuse of discretion in denying the defendant's request for a presentence diagnostic study.

No error.