STATE OF NORTH CAROLINA v. CHARLES REDDING SURCEY, DEFENDANT

No. COA99-937

(Filed 1 August 2000)

**1. Burglary and Unlawful Breaking or Entering— first-degree burglary and discharging a firearm into an occupied dwelling—occupancy of dwelling not alleged—second-degree burglary**

A defendant was not properly indicted for first-degree burglary where the State failed to allege that the dwelling house was occupied at the time of the breaking and entering, although the caption of the indictment referred to the offenses of "First Degree Burglary" and "Discharge [of a] Firearm Into [an] Occupied Building." The indictment alleged only second-degree burglary and the first-degree burglary conviction was reversed in part upon these grounds.

**2. Burglary and Unlawful Breaking or Entering; Firearms and Other Weapons— weapon fired with barrel inside house— burglary and discharging a weapon into an occupied dwelling—mutually exclusive**

A first-degree burglary conviction was reversed where defendant pushed a shotgun barrel through a window in the victim's house before firing. Defendant was convicted and sentenced for first-degree burglary and discharging a firearm into an occupied dwelling, but was not properly indicted for first-degree burglary, and the two offenses were mutually exclusive in that defendant must enter the dwelling for burglary (for which the gun may be an implement of the person), but is required to shoot into the dwelling while remaining outside (even if the gun is inside) for discharging the firearm into an occupied dwelling.

Appeal by defendant from judgment entered 17 February 1999 by Judge Donald W. Stephens in Johnston County Superior Court. Heard in the Court of Appeals 18 May 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Marilyn R. Mudge, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Bobbi Jo Markert, for defendant-appellant.*

SMITH, Judge.

Defendant appeals a judgment entered on conviction by a jury of first-degree burglary and discharging a firearm into an occupied dwelling. Defendant contends this Court must vacate or reverse one of the convictions because they are mutually exclusive offenses. We agree.

The State's evidence at trial tended to show the following: On 13 September 1998 at approximately 10:00 p.m., Lloyd Pete McLamb (McLamb), while sitting in his living room, heard a loud sound, "like thunder[,] come into [his] window." McLamb testified a gun barrel had "punched out" his window and was sticking "about 12 to 14 inches" into the house, at a distance of "about two and a half or three foot [sic]" from him. McLamb jumped from his couch, retrieved a pistol, and hid himself behind a bedroom door facing the living room. McLamb testified he saw a man he recognized as defendant, "squatted down with the gun still in [his] window," and that when he stuck his head out from behind the door, defendant fired a shot that "sprayed the side of [McLamb's] face." McLamb further testified that he fired two shots and the second hit defendant. Defendant ran and McLamb proceeded to the front porch where he observed defendant run to a trailer located approximately 100 to 160 feet behind McLamb's residence. McLamb called 911.

Johnston County Deputies Sean Stewart (Deputy Stewart) and Frank Godwin (Deputy Godwin), arrived to McLamb's residence at approximately 10:30 p.m. Deputy Stewart testified that upon approaching the residence they noticed "a shotgun shell . . . lying on the porch" below a broken window, and a "trail" of blood, which they followed "down the porch . . . into the back yard . . . [and] to a mobile home" behind McLamb's residence. The front door to the trailer was open and the deputies observed defendant sitting upright in a chair bleeding from the side of his face. Defendant told the deputies that McLamb had shot him. The deputies returned to McLamb's house and questioned him about defendant's injury.

The deputies recovered the .22 caliber pistol McLamb used to shoot defendant, but were unable to locate the shotgun used by defendant. McLamb testified he found a shotgun six days after the shooting on a footpath between his house and defendant's trailer, and that he immediately called the police. Deputy Rodney Lee Starling (Deputy Starling) testified he was dispatched to McLamb's residence on 19 September 1998 and retrieved a shotgun from some brush on

the edge of the woods approximately 100 feet behind McLamb's residence. McLamb testified the shotgun was the same firearm defendant had fired into his house on 13 September 1998.

Defendant was indicted 26 October 1998 for burglary and discharging a firearm into an occupied dwelling. On 17 February 1999 a jury found defendant guilty, and the trial court, consolidating the convictions, sentenced defendant to a minimum of 82 months and a maximum of 108 months imprisonment.

[1] Defendant contends the first-degree burglary conviction must be reversed because the indictment failed to allege "occupancy of the dwelling house," an essential element of first-degree burglary.

A valid indictment charges all essential elements of an alleged criminal offense to inform a defendant of the accusation against him and enables him to be tried accordingly. *State v. McBane*, 276 N.C. 60, 65, 170 S.E.2d 913, 916 (1969).

Our Supreme Court has held that

the constituent elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein.

*State v. Person*, 298 N.C. 765, 768, 259 S.E.2d 867, 868 (1979). *See* N.C.G.S. § 14-51 (1999). The "sole distinction" between first-degree and second-degree burglary is the essential element of actual occupancy. *State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979). *See State v. Wilson*, 289 N.C. 531, 538, 223 S.E.2d 311, 315 (1976) ("[i]f the burglarized dwelling is occupied it is burglary in the first degree; if unoccupied, it is burglary in the second degree"). Accordingly, an indictment for burglary which fails to allege that the dwelling house was occupied by someone during commission of the crime, alleges only burglary in the second-degree. *State v. Fleming*, 107 N.C. 905, 908, 12 S.E. 131, 132 (1890).

In the instant case, the caption of the indictment refers to the offenses of "First Degree Burglary" and "Discharge [of a] Firearm Into [an] Occupied Dwelling," however, the indictment on the burglary offense, reads as follows:

I. The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above

> the defendant named above unlawfully, willfully and feloniously did during the nighttime hours of 10:00 p.m. and 11:00 p.m. on September 13, 1998, break and enter the dwelling house of Lloyd McLamb located at 1691 Holly Grove Church Road, Benson, North Carolina. The defendant broke and entered with the intent to commit a felony therein.

The State's failure to allege that the dwelling house was occupied at the time of the breaking and entering results in the indictment only alleging second-degree burglary. As a result of this omission, and for the reasons hereinafter stated, we reverse the conviction for first-degree burglary.

[2] Defendant also contends this Court "must vacate either the burglary or the discharging a firearm into occupied property conviction because . . . the two verdicts are mutually exclusive." Defendant argues the burglary offense requires that defendant "ent[er]" into the house, whereas the charge of discharging a firearm requires that a defendant fire "into" occupied property while remaining outside such property, requiring "defendant's body to be in two different places at the same time." Though we agree with defendant's contention, it is not necessary for us to take such action in light of our reversal of the burglary conviction.

"Burglary is defined as the breaking and *entering* of a dwelling . . . during the nighttime with intent to commit a felony therein," and occupancy determines whether the offense is first-degree or second-degree. *State v. Simmons*, 65 N.C. App. 164, 166, 308 S.E.2d 502, 503 (1983) (emphasis added). *See* G.S. § 14-51. Our Supreme Court in *State v. Gibbs*, 297 N.C. 410, 418, 255 S.E.2d 168, 174 (1979), adopted the following in regards to the element of "entry" for burglary:

> Literally, entry is the act of going into the place after a breach has been effected, but the word has a broad significance in the law of burglary, for it is not confined to the intrusion of the whole body, but may consist of the insertion of any part for the purpose of committing a felony. Thus, an entry is accomplished by inserting into the place broken the hand, the foot, or any instrument with which it is intended to commit a felony.

*Id.* (citing 13 Am. Jur. 2d *Burglary* § 10). Therefore in the case *sub judice*, defendant, in pushing the shotgun through McLamb's window and firing, effectively committed a burglary by virtue of the gun,

which is considered to be an implement of his person, for "entry" into McLamb's home. *See id.*

Regarding the conviction for discharging a firearm into an occupied dwelling, the State was required to prove defendant "willfully or wantonly discharge[d] or attempt[ed] to discharge . . . [a] firearm *into* any building. . . ." N.C.G.S. § 14-34.1(2) (1999) (emphasis added). In *State v. Mancuso*, 321 N.C. 464, 364 S.E.2d 359 (1988), the defendant was charged with discharging a firearm into an occupied motor vehicle, a violation of the same statute as defendant in the instant case is alleged to have violated. In *Mancuso*, the defendant contended he could not be convicted of discharging firearm "into" the occupied vehicle because he was standing outside the automobile and holding a gun inside the automobile when he shot the victim. *Id.* at 468, 364 S.E.2d at 362. The *Mancuso* court rejected this argument and held that "a firearm can be discharged 'into' occupied property even if the firearm itself is inside the property, so long as the person discharging it is not inside the property," reasoning that it did not believe the Legislature intended "a person should escape liability for this crime by sticking his weapon inside the occupied property before shooting." *Id.* The evidence in the case at bar is uncontradicted that at the time defendant fired the shot at McLamb, he was standing on McLamb's porch outside the residence and was holding the shotgun inside McLamb's living room window. Accordingly, defendant's position outside the house while holding the shotgun inside the house was sufficient evidence to support a charge of discharging a firearm into an occupied dwelling, because the shot was fired "into" McLamb's home while defendant remained outside the residence.

However, while defendant may properly be convicted of either offense, he may not be convicted of both because they are mutually exclusive offenses requiring that defendant "enter," or be *inside* the residence for burglary, and that he shoot "into" the dwelling while remaining *outside* McLamb's home for the offense of discharging a firearm "into" an occupied dwelling. "Where several offenses charged allegedly arise from the same transaction, and the offenses are mutually exclusive, a defendant may not be convicted of more than one of the mutually exclusive offenses." *State v. Hall*, 104 N.C. App. 375, 386, 410 S.E.2d 76, 82 (1991) (offenses mutually exclusive because determination that defendants entered into one agreement to commit a series of unlawful acts over a period of time is inconsistent with a determination that multiple agreements to commit same series of acts over same period of time were made; "either one agreement was

made or two agreements were made. . . . Both views cannot exist at the same time"), *aff'd*, 342 N.C. 892, 467 S.E.2d 243, *cert. denied*, 519 U.S. 873, 136 L. Ed. 2d 129 (1996). *See State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 167 (1990) (embezzlement and false pretenses are mutually exclusive offenses; defendant can be indicted and tried on both but cannot be convicted of both where they are based upon a single transaction), and *State v. Jewell*, 104 N.C. App. 350, 354, 409 S.E.2d 757, 760 (1991) (aiding and abetting and accessory after the fact are mutually exclusive offenses, thus defendant cannot be convicted of both), *aff'd*, 331 N.C. 379, 416 S.E.2d 3 (1992).

Therefore, we reverse the first-degree burglary conviction, an offense for which defendant was never indicted, and find no error in the conviction of discharging of a firearm into an occupied dwelling.

No error in part and reversed in part.

Judges WALKER and TIMMONS-GOODSON concur.