STATE OF NORTH CAROLINA v. SAMMY JO BUMGARNER, Defendant

No. COA00-1219

(Filed 4 December 2001)

**1. Burglary— attempted first-degree—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of attempted first-degree burglary, because: (1) defendant admitted to pulling a chair up to the victim's window, having a gun in his possession when it discharged, and shooting the victim, showing that the jury could have reasonably inferred that defendant moved the window screen; and (2) the jury could infer that defendant had the intent to commit larceny inside the home based on defendant's string of car break-ins and alleged attempted burglary earlier that evening.

**2. Homicide— first-degree felony murder—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder, because: (1) the victim died during the commission of a felonious attempted burglary, meaning there was also substantial evidence to satisfy the elements of first-degree felony murder; and (2) the circumstances suggest that the victim was killed by someone shooting from his window or inside of his room, and nothing suggests otherwise.

**3. Homicide— first-degree murder—instruction on lesser-included offenses—voluntary manslaughter—involuntary manslaughter**

The trial court did not err in a first-degree murder case by refusing to instruct the jury on the lesser-included offenses of voluntary and involuntary manslaughter, because: (1) there was nothing in the evidence requiring an instruction on voluntary manslaughter, including defendant's statement, to indicate that

STATE v. BUMGARNER

[147 N.C. App. 409 (2001)]

defendant was provoked, defending himself, or acting in a heat of passion; and (2) there was nothing in the evidence requiring an instruction on involuntary manslaughter when the alternatives presented to the jury for the underlying crime that defendant committed were both felonies.

Appeal by defendant from judgment entered 14 April 2000 by Judge James E. Lanning in Gaston County Superior Court. Heard in the Court of Appeals 12 September 2001.

*Attorney General Roy Cooper, by Joan M. Cunningham, Assistant Attorney General, for the State.*

*The Law Firm of Charles L. Alston, Jr., by Charles L. Alston, Jr., for defendant-appellant.*

HUDSON, Judge.

Defendant appeals his convictions for one count of first-degree murder, one count of attempted first-degree burglary, and one count of breaking and entering a motor vehicle. Defendant was found guilty by the jury on 13 April 2000 and was sentenced to one life sentence without parole for the murder, and a consolidated sentence of twenty-nine months to forty-four months for the attempted burglary and breaking and entering a motor vehicle. Defendant's two assignments of error are: (1) that the trial court committed reversible error by refusing to dismiss the charges, and (2) that the trial court committed reversible error by refusing to instruct the jury on lesser included offenses. We find no error.

On 8 August 1998, defendant was arrested for breaking and entering a motor vehicle. After waiving his Miranda rights, defendant was questioned about multiple break-ins that had occurred in the early morning hours of 7 August 1998. Defendant was also questioned about the death of Ted Hunt, a sixty-two year old man found shot to death in his bedroom, not far from the multiple automobile break-ins in Gaston County. According to the investigating officers, defendant broke down when asked about the "old man" and confessed to having "accidentally" shot him. Defendant also confessed to breaking into a car and taking a "shiny-looking" gun out of it. Defendant was charged with first-degree murder, first-degree burglary, two counts of breaking and entering a motor vehicle, and one count of misdemeanor larceny.

The testimony at trial indicated: Ted Hunt, the victim, was living with his ninety-four year old mother, Claudia, in her house when he was killed. He went to bed sometime after his mother retired on 6 August 1998. At some point in the night Claudia heard a thump, but returned to sleep without investigating further. She woke up the next morning and left the house for a hair appointment. When she returned to the house to find that her son was not yet up, she checked and found him dead on the floor of his bedroom, in a pool of blood. That morning, Claudia also noticed that a green plastic chair that she kept on the porch was under her son's window and she believed that no one in her family ever moved the chairs from the porch.

Several of the Hunts' neighbors also testified about the events in the late night and early morning of 7 August 1998. Some heard shots in the night and others woke to find that someone had broken into their cars. A neighbor, Thelma Hall, saw the defendant near her house at two in the morning. She later found that her cars had been broken into and ransacked, and that one of the windows to her house had been raised from the outside. The police matched defendant's fingerprint with one found on a compact disc (CD) case from one of Ms. Hall's cars.

Another neighbor, Joe Rhyne, was the landlord of the defendant's grandmother. Rhyne testified that he knew the defendant because the defendant stayed with his grandmother occasionally. Rhyne testified that when he woke up on the morning of 7 August 1998, he found that someone had broken into his cars and stolen his .32 caliber revolver from the console of one of the cars; the gun was not recovered. Rhyne testified that the gun was difficult to fire, because it had a "fairly strong trigger spring." Rhyne also found that someone had pried the lids off of the coin boxes on the washers and dryers in his apartment complex, but had not gotten to the money.

Several law enforcement investigators and experts also testified. SBI Agent David Santora, an expert in forensic firearm identification, testified that the bullet found at the crime scene was a .32 caliber bullet. SBI Agent Troy Hamlin, an expert in trace evidence, testified that the bullet from the crime scene could have come from a gun like Mr. Rhyne's, but he was unable to match it to the unfired bullets Mr. Rhyne provided. Gaston County Police crime scene investigator, Officer Clyde Putnam, testified that he believed that the screen in Ted Hunt's window had been moved, because it was not in its proper place in the tracks of the window. He found no holes in the screen, and he discovered blood on the bedroom window sill. Two SBI agents

testified that Ted Hunt's blood was on the sill, not the defendant's. SBI Agent Ricky Navarro, an expert in comparing and examining footwear impressions, matched a footprint found in the green chair outside of Ted Hunt's window to the shoe the defendant was wearing in the early morning hours of 7 August 1998. Dr. Cheryl Leone, a forensic pathologist, testified that Ted Hunt was killed by a gunshot at close range that entered Mr. Hunt's body straight on, and that a second bullet grazed his ear. Defendant presented no evidence during his trial or sentencing.

On appeal, defendant presents two arguments. First, the defendant contends that the trial court erred by denying his motion to dismiss based on an insufficiency of the evidence. The standard of review of a motion to dismiss is well-settled.

When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied.

The issue of whether the evidence presented constitutes substantial evidence is a question of law for the court. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*State v. Earnhardt,* 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982) (citations omitted); *see also State v. Mercer,* 317 N.C. 87, 343 S.E.2d 885 (1986) (finding that the trial court properly denied defendant's motion to dismiss). Our Courts have repeatedly noted that "[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Smith,* 146 N.C. App. 1, 7, 551 S.E.2d 889, 893 (2001) (quoting *State v. Vause,* 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991) (emphasis omitted) (citations omitted)); *see also State v. Patterson,* 335 N.C. 437, 449-50, 439 S.E.2d 578, 585-86 (1994) (holding that the trial court properly denied defendant's motion to dismiss). Circumstantial evidence must also be considered by the court.

It is immaterial that any individual piece of circumstantial evidence, taken alone, is insufficient to establish the identity of

the perpetrator. If all the evidence, taken together and viewed in the light most favorable to the State, amounts to substantial evidence of each and every element of the offense and of defendant's being the perpetrator of such offense, a motion to dismiss is properly denied.

*Mercer*, 317 N.C. at 98, 343 S.E.2d at 892 (citations omitted).

Before reviewing the evidence presented in the record, we note that while defendant is appealing all of his convictions, he argues that the evidence was insufficient to sustain the two convictions: first-degree murder and attempted first-degree burglary. Therefore, we limit our review of the evidence to these two convictions.

In his brief, defendant contends: "[w]hat is clear from the evidence is 1) there is no eyewitness testimony placing the defendant inside of the Hunt home; 2) that the blood on the window sill belonged to the decedent not the defendant; 3) that the defendant had relatives that lived in the area; 4) the murder weapon was not recovered; and 5) that nothing was taken from the Hunt [home.]" Defendant questions the evidence illustrating his responsibility for the murder and the burglary, his intent to commit a larceny, and the validity of the confession defendant gave to police officers. We find that the evidence presented in the record is sufficient to support the trial court's denial of defendant's motion to dismiss.

Pursuant to N.C. Gen. Stat. § 14-17 (1999), "[a] murder which shall be perpetrated by means of . . . burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree." In accordance with this statute, the two elements of first-degree (felony) murder are: 1) a murder that was 2) committed in the perpetration of a felony. Here, the felony is the attempted burglary of the Hunt home. "Burglary is defined in North Carolina by the common law and [N.C. Gen. Stat. § 14-51 (1999)], as the breaking and entering of the dwelling house or sleeping apartment of another in the nighttime with intent to commit a felony therein, whether such intent be executed or not." *State v. Goodman*, 71 N.C. App. 343, 345, 322 S.E.2d 408, 410 (1984), *disc. review denied*, 313 N.C. 333, 327 S.E.2d 894 (1985). Here, defendant was convicted of *attempted* first-degree burglary. "An attempt to commit a crime is an act done with intent to commit that crime, carried beyond mere preparation to commit it, but falling short of its actual commission." *Id.* Any murder committed in the commission of a felony or

attempted felony constitutes first-degree murder. Consequently, we must first examine whether there was sufficient evidence presented to support the conviction for attempted first-degree burglary. *See* N.C.G.S. § 14-17.

**[1]** As stated previously, the elements of first-degree burglary are: (1) the breaking and entering (2) of the dwelling house or sleeping apartment of another (3) in the nighttime (4) with the intent to commit a felony therein. *See Goodman,* 71 N.C. App. at 345, 322 S.E.2d at 410; *see also State v. Beaver,* 291 N.C. 137, 229 S.E.2d 179 (1976) (upholding conviction for first-degree burglary). The Hunts' home was plainly a dwelling house belonging to someone other than defendant. The incident occurred at night, sometime after Claudia Hunt went to bed at ten o'clock.

Defendant contends that he did not break and enter the Hunts' home and that he did not have an intent to commit a felony therein. However, in *Goodman,* this Court found that a breaking and entering existed when defendant removed one corner of a window screen by loosening a peg. *See* 71 N.C. App. at 346, 322 S.E.2d at 410. Here, the evidence was similar. At trial, the investigating officer testified on this point:

Q  What did you notice about the window, if anything?

A  I noticed that the window was open and that the screen was out of place.

Q  Okay. When you say "out of place," would you describe to the jury what you mean by "out of place"?

A  The screen was out of the tracks from the storm window.

In addition to this testimony, the State offered defendant's statement to the police, which included the following:

I had been at a friend's house partying Thursday night. . . . After that I went up to this house. I picked up a chair from somewhere in the yard and set it up against the house. The window on the back of the house was open. I was standing on the ground looking at the window. I could not see anything. It was pitch black. I saw a face in the window and it scared me. I started to fall backwards and the gun went off. I fell down on my back. . . . I did not intend to shoot that man that night. I'm sorry it happened. I did not even know the man.

In the chair outside and underneath Ted Hunt's bedroom window, the police found a footprint which matched the sole design, shape, and size of the shoe defendant wore.

As to whether or not defendant crawled through Ted Hunt's window, this Court has held that entry, for the purposes of burglary, is committed by the "insertion of any part [of the body] for the purpose of committing a felony. Thus, an entry is accomplished by inserting into the place broken the hand, the foot, or any instrument with which it is intended to commit a felony. . . ." *State v. Gibbs*, 297 N.C. 410, 418, 255 S.E.2d 168, 174 (1979) (quoting 13 Am. Jur. 2d, *Burglary* § 10, at 327). In *Gibbs*, the defendant shot a bullet through a pane of glass into a home, injuring one occupant of the house. Next, he pointed his gun at another occupant while requesting money; the victim put his wallet on the table, and the defendant reached his hand into the room through the shattered window and took the wallet. This reaching satisfied the entry element of burglary. *See id.* at 418, 255 S.E.2d at 174. In a more recent case, *State v. Surcey*, the Court determined that had the defendant been properly indicted, his conviction for burglary would have been appropriate because defendant had put a gun through a broken window pane of the victim's house and fired the gun. *See* 139 N.C. App. 432, 435-36, 533 S.E.2d 479, 481-82 (2000). This Court noted that the defendant had "effectively committed a burglary by virtue of the gun, which is considered to be an implement of his person, for entry into [the victim's] home." *Id.* (citations omitted).

The defendant admitted to pulling a chair up to Ted Hunt's window, to having a gun in his possession when it discharged, and shooting Mr. Hunt. The jury could have reasonably inferred that he moved the screen, because this inference "stand[s] upon some clear and direct evidence, and not upon some other inference or presumption." *State v. Ledford*, 315 N.C. 599, 610, 340 S.E.2d 309, 317 (1986) (citations omitted). Here, the jury could have reasonably inferred from the evidence presented that the defendant stood on the chair and removed the screen from Ted Hunt's window, which was sufficient to satisfy the elements of attempted first-degree burglary. From these acts the jury could and did infer that defendant acted with an intent to commit a crime, "carried beyond mere preparation to commit it, but falling short of its actual commission." *Goodman*, 71 N.C. App. at 345, 322 S.E.2d at 410.

The remaining element of burglary requires that a person who breaks and enters have the intent to commit a felony therein; defend-

ant challenges the sufficiency of the evidence of intent. The trial court instructed the jury that it could infer that defendant had the intent to commit larceny inside the Hunts' home, based on defendant's string of car break-ins and alleged attempted burglary earlier that evening. This approach is grounded in considerable case law. In *State v. Sweezy*, 291 N.C. 366, 230 S.E.2d 524 (1976), the defendant was seen standing in the open doorway of his victim's home. He contended that there was no proof that he intended to commit larceny at the time of the breaking and entering. *See id.* at 384, 230 S.E.2d at 535. The Court applied the established rule as follows:

> "The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the night time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, in the night time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent."

*Id.* (quoting *State v. McBryde,* 97 N.C. 393, 397, 1 S.E. 925, 927 (1887)). Similarly, in *State v. Accor and State v. Moore*, the Court discussed the presumption of intent on those who break and enter a dwelling house, not their own, during the night. *See* 277 N.C. 65, 72-74, 175 S.E.2d 583, 588-89 (1970), *aff'd*, 281 N.C. 287, 188 S.E.2d 332 (1972). The Court in *Accor and Moore* cited an older opinion, *State v. Thorpe*, in which the Court held that " '[t]he indictment having identified the intent necessary, the State was held to the proof of that intent. Of course, intent or absence of it may be inferred from the circumstances surrounding the occurrence, but the inference must be drawn by the jury.' " *Id.* at 73, 175 S.E.2d at 588 (quoting *State v. Thorpe*, 274 N.C. 457, 464, 164 S.E.2d 171, 176 (1968)). Here, the judge properly allowed the jury to decide whether the defendant satisfied all elements of attempted first-degree burglary.

[2] Considering the evidence in the light most favorable to the State, we find substantial evidence of each element of attempted first-degree burglary. *See State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). Because Ted Hunt died during the commission of the felonious attempted burglary, there is also substantial evidence to satisfy the elements of first-degree (felony) murder. *See* N.C.G.S.

§ 14-17. The circumstances suggest that Mr. Hunt was killed by someone shooting from his window or inside of his room, and nothing suggests otherwise. There "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith*, 300 N.C. at 78-79, 265 S.E.2d at 169.

[3] In his second argument, the defendant contends that the trial court should have instructed the jury on the lesser included offenses of first-degree murder. *See State v. Shook*, 327 N.C. 74, 81, 393 S.E.2d 819, 823 (1990) (noting that involuntary manslaughter is a lesser included offense of first-degree murder). We do not agree.

> A trial court must give instructions on all lesser-included offenses that are supported by the evidence, even in the absence of a special request for such an instruction; and the failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense. *See State v. Montgomery*, 341 N.C. 553, 567, 461 S.E.2d 732, 739 (1995); *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). The trial court may refrain from submitting the lesser offense to the jury only where the "evidence is clear and positive as to each element of the offense charged" and no evidence supports a lesser-included offense. [State v.] Peacock, [313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985)].

*State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000), *cert. denied*, 531 U.S. 1083, 148 L. Ed. 2d 684 (2001). If there is any evidence that indicates the absence of an important element of the primary offense and the existence of an element of a lesser offense, the jury must be instructed on the lesser offense as well. *See State v. Annadale*, 329 N.C. 557, 406 S.E.2d 837 (1991); *Peacock*, 313 N.C. at 558, 330 S.E.2d at 193. However, "[a] defendant is not entitled to an instruction on a lesser included offense merely because the jury could possibly believe some of the State's evidence but not all of it." *Annadale*, 329 N.C. at 568, 406 S.E.2d at 844.

Here, the jury was instructed on first-degree murder in the perpetration of a felony and second-degree murder. Defense counsel requested that the jury also be instructed on voluntary and involuntary manslaughter. The defendant renews this request in his appeal, based on his belief that "there was evidence presented at trial to support an instruction on this lesser charge." Defendant contends that the court's failure to so instruct was reversible error. "Generally

voluntary manslaughter occurs when one kills intentionally but does so in the heat of passion suddenly aroused by adequate provocation or in the exercise of self-defense . . . ." *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E.2d 905, 916 (1978). There was nothing in the evidence, including defendant's statement, to indicate that he was provoked, defending himself, or acting in a heat of passion. The Court, in *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981), noted that "[t]he sole factor determining the judge's obligation to give such [a lesser included] instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." Here, there was no evidence to require submitting the offense of voluntary manslaughter.

Similar logic applies to involuntary manslaughter. "Involuntary manslaughter is the unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) by an act or omission constituting culpable negligence." *State v. Wrenn*, 279 N.C. 676, 687, 185 S.E.2d 129, 136 (1971) (citing *State v. Foust*, 258 N.C. 453, 128 S.E.2d 889 (1963)) (emphasis omitted), *cert. denied*, 282 N.C. 430, 192 S.E.2d 839 (1972). Here, defendant could have been found guilty of involuntary manslaughter if the underlying crime that he committed was a misdemeanor. However, the alternatives presented to the jury were to find the defendant guilty of the underlying offenses, first-degree burglary, attempted first-degree burglary, of which both are felonies, or not guilty. Consequently, there was no basis for instruction to the jury on involuntary manslaughter.

No error.

Judges WALKER and McGEE concur.